UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

V.W., a minor, by and through his parent and natural guardian DERECK WILLIAMS; R.C., a minor, by and through his parent and natural guardian SANDRA CHAMBERS; C.I., a minor, by and through his parent and natural guardian VERTELL PENDARVIS; M.R., a minor, by and through his parent and natural guardian KAREN RAYMOND; F.K., a minor, by and through his parent and natural guardian KASHINDE KABAGWIRA; and J.P., a minor, by and through his parent and natural guardian ALISSA QUINONES; on behalf of themselves and all others similarly situated,

        Plaintiffs,

  v.

EUGENE CONWAY, Onondaga County Sheriff in his official capacity; ESTEBAN GONZALEZ, Chief Custody Deputy of the Onondaga County Justice Center, in his official capacity; KEVIN M. BRISSON, Assistant Chief Custody Deputy, in his official capacity, and SYRACUSE CITY SCHOOL DISTRICT,

        Defendants.

---

Case No.: 16-cv-1150 (DNH)(DEP)

## DEFENDANT SYRACUSE CITY SCHOOL DISTRICT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**BOND, SCHOENECK & KING, PLLC**
Office & P.O. Address:
One Lincoln Center
Syracuse, New York 13202
Telephone:  (315) 218-8000
Facsimile:  (315) 218-8100

*Attorneys for Defendant the Syracuse City School District*

i

2791676.1

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................................... 1

**BACKGROUND** ........................................................................................................................ 1

    A.    THE SCSD HAS IMPLEMENTED A COMPREHENSIVE PROGRAM AT THE JUSTICE CENTER TO MEET THE EDUCATIONAL NEEDS OF INCARCERATED YOUTHS. .................................................................................. 2

    B.    THE SCSD DOES NOT PLACE INMATES IN THE SEGREGATED HOUSING UNIT, AND HAS NOT ............................................................................................ 5

**ARGUMENT** .............................................................................................................................. 7

    A.    THE COURT SHOULD GRANT THE SCSD'S MOTION FOR SUMMARY JUDGMENT PRIOR TO ISSUING A DETERMINATION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION. ................................................... 7

    B.    THE SCSD SHOULD BE DISMISSED FROM THIS ACTION BECAUSE THE PLAINTIFFS HAVE NOT CHALLENGED A POLICY OR PRACTICE OF THE SCSD. ......... 7

    C.    WITH RESPECT TO PLAINTIFFS' IDEA CLAIMS AGAINST THE SCSD, THE SCSD'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED FOR THE ADDITIONAL REASON THAT PLAINTIFFS CANNOT PURSUE CIVIL CLAIMS FOR A DENIAL OF FAPE WITHOUT FIRST EXHAUSTING THEIR STATE ADMINISTRATIVE REMEDIES. ............................................................. 10

    D.    FOR THE REASONS SET FORTH ABOVE, PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED TO THE EXTENT IT SEEKS TO CERTIFY A CLASS OR SUBCLASS WITH RESPECT TO ANY CLAIMS AGAINST THE SCSD. ............................................................................................. 13

**CONCLUSION** ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*G.F. v. Contra Costa Cnty*,
   13-cv-03667, 2015 U.S. Dist. LEXIS 100512 (N.D. Cal. July 30, 2015) .........................11, 12

*Handberry v. Thompson*,
   219 F. Supp. 2d 525 (S.D.N.Y. 2002) ....................................................................................8

*Handberry v. Thompson*,
   446 F.3d 355 (2d Cir. 2006) ...................................................................................................8

*Kalliope R. Ex rel. Irene D. v. N.Y.S. Dep't of Educ.*,
   827 F. Supp. 2d 130 (E.D.N.Y. 2010) ..................................................................................11

*Ironforge.com v. Paychex, Inc.*,
   747 F. Supp. 2d 384 (W.D.N.Y. 2010) ...................................................................................7

*Larsen v. JBC Legal Group, P.C.*,
   235 F.R.D. 191 (E.D.N.Y. 2006) ............................................................................................7

*Mendez v. Radec Corp.*,
   260 F.R.D. 38 (E.D.N.Y. 2009) ..............................................................................................7

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
   386 F.3d 107 (2d Cir. 2004), *cert denied,* 544 U.S. 968 (2005) ....................................10, 11

*Polera v. Board of Educ. of Newburgh Enlarged City Sch. Dist.*,
   288 F.3d 478 (2d Cir. 2002) .................................................................................................10

*R. A-G ex rel R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*,
   12-cv-960S, 2013 U.S. Dist. LEXIS 93924 (W.D.N.Y. July 30, 2013) ...........................10, 11

*Schweizer v. Trans Union Corp.*,
   136 F.3d 233 (2d Cir. 1998) ...................................................................................................7

**Statutes**

Individuals with Disabilities Education Act, 20 U.S.C. § 1410 et seq. ................................ *passim*

20 U.S.C. §§ 1412-1413 ..................................................................................................................3

20 U.S.C. § 1415(i)(2)(A) .............................................................................................................10

N.Y. Educ. Law § 3202(7) ..............................................................................................................3

**Other Authorities**

34 C.F.R. § 300.2(b)(1)(iv) .................................................................................................3

34 C.F.R. §§ 300.200-300.201 ...........................................................................................3

7 N.Y.C.R.R. § 304.11 .........................................................................................................5

8 N.Y.C.R.R. Parts 200 & 201 ............................................................................................3

8 N.Y.C.R.R. §§ 118.1, 118.4 .............................................................................................3

9 N.Y.C.R.R. § 7070.2 ........................................................................................................3

2791676.1

**PRELIMINARY STATEMENT**

The instant complaint attempts to hold the Syracuse City School District (the "SCSD") responsible for policies of the Onondaga County Justice Center (the "Justice Center") over which the SCSD has no control and with which it plays no role in implementing.  The Complaint challenges the placement of youths in segregated housing at the Justice Center.  Plaintiffs seek declaratory and injunctive relief against the Onondaga County Sheriff, the Chief Custody Deputy of the Justice Center, the Assistant Chief Custody Deputy (collectively the "County Defendants"), and the SCSD.  Because the SCSD is not responsible for placing the Plaintiffs in segregated housing, the Complaint should be dismissed as against the SCSD.

**BACKGROUND**

Plaintiffs assert that the Sheriff's Department's use of segregated housing constitutes cruel and unusual punishment, in contravention of the Eighth Amendment of the United States Constitution.  Plaintiffs further assert that youth who are placed in segregated housing do not receive adequate educational services, and that each Defendant has therefore denied Plaintiffs, and those who are allegedly similarly situated, their right to an education during their incarceration, in violation of the Fourteenth Amendment.  Finally, Plaintiffs allege that by failing to ensure the provision of adequate educational services to youths who are placed in segregated housing, Defendants have deprived Plaintiffs R.C. and F.K., and a putative subclass of students with disabilities who are similarly situated to R.C. and F.K., a free appropriate public education ("FAPE") in violation of their rights pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1410 et seq.

With respect to their Eighth Amendment and Fourteenth Amendment claims, Plaintiffs have moved to certify a class consisting of:

> ***All 16- and 17-year-olds who are now or will be incarcerated at the Onondaga County Justice Center.***

With respect to their IDEA claim, Plaintiffs seek certification of an "IDEA subclass" consisting of:

> ***All 16- and 17-year-olds with disabilities, as defined by the Individuals with Disabilities Education Act, who are now or will be incarcerated at the Onondaga County Justice Center, who are in need of special education and related services.***

The SCSD takes no position with respect to Plaintiffs' motion to certify a class with respect to their claims against the County Defendants. However, the SCSD opposes the motion to the extent that Plaintiffs seek to certify any class or subclass with respect to their Fourteenth Amendment and IDEA claims against the SCSD.

As set forth in the accompanying declarations, the SCSD bears *no* responsibility for the housing conditions that Plaintiffs are challenging. Neither the Complaint nor Plaintiffs' Motion for Class Certification alleges that the SCSD maintains a policy or practice that bears any causal relationship to the allegedly inadequate educational services that are the basis for Plaintiffs' claims against the SCSD. The SCSD does not place inmates in segregated housing. The only reason inmates in the segregated housing unit do not receive direct educational services is because the County Defendants do not permit the SCSD's personnel to have direct contact with such inmates. Accordingly, the SCSD should be dismissed from this lawsuit, and no class or subclass should be certified with respect to any claim against the SCSD.

### A. The SCSD Has Implemented A Comprehensive Program At The Justice Center To Meet the Educational Needs Of Incarcerated Youths.

The Justice Center is a maximum security facility that houses both adult and juvenile pre-trial detainees, sentenced individuals, and technical parole violators. *Declaration of John A. Dittmann, Jr.*, executed November 7, 2016 (hereafter "*Dittmann Dec.*"), ¶ 2. The amount of time

2

that inmates are detained at the Justice Center varies; however, the population is principally transient, with the average stay being approximately 15 days. *Id.*

As the school district in which the Justice Center is located, the SCSD is responsible for educating incarcerated youths who are housed at the Justice Center. Inmates are eligible to receive educational services from the SCSD provided the inmate:

(1) lacks a high school diploma or its equivalent;

(2) has been incarcerated for ten or more calendar days or is likely to be so incarcerated; and

(3) is under 21 years of age on September 1 of the applicable school year;

N.Y. Educ. Law § 3202(7);  8 N.Y.C.R.R. §§ 118.1, 118.4; 9 N.Y.C.R.R. § 7070.2.

The SCSD also serves as the Local Educational Agency ("LEA") with respect to incarcerated youths who qualify as students with disabilities pursuant to the IDEA, which involves a number of responsibilities including, but not limited to, the provision of special education and related services and compliance with IDEA due process requirements.  20 U.S.C. §§ 1412-1413; 34 C.F.R. §§ 300.200-300.201; 8 N.Y.C.R.R. Parts 200 & 201.  Onondaga County and the Sheriff's Office share responsibility for the provision of special education services to students with disabilities pursuant to the Code of Federal Regulations, which provides that the IDEA applies to all political subdivisions of the state that are involved in the education of children with disabilities, including the local juvenile correctional facilities themselves.  34 C.F.R. § 300.2(b)(1)(iv).

The division of responsibility with respect to educational services at the Justice Center is set forth in a Memorandum of Understanding ("MOU") between the Sheriff's Office and the SCSD. *Dittmann Dec.*, ¶ 5. Pursuant to the MOU, the SCSD is responsible for administering and supervising educational programming at the Justice Center, and the Justice Center is

responsible for providing SCSD personnel with access to appropriate classroom and instructional space for the safe delivery of educational programs, and for "coordinat[ing] the daily transferring of youth to programming." *Id.*, Ex. 1.

The SCSD operates a high school program at the Justice Center that is staffed by sixteen certified general education teachers, four certified special education teachers, and one school psychologist. *Dittmann Dec.*, ¶ 6. The program provides instruction in the following areas: (1) basic educational skill development in reading and communication skills; (2) high school credit course support; (3) instruction to assist youth in succeeding at the Test Assessing Secondary Completion ("TASC"); (4) special education and related services for inmates who qualify as students with disabilities; (5) instruction for students with limited English proficiency; (6) life management classes; (6) career planning and small group instruction for job readiness; (7) career and technical education, including additional help in reading/math; and (8) vocational subjects. *Declaration of Signe Nelson*, executed November 7, 2016 (hereafter "*Nelson Dec.*"), ¶ 3.

When new juvenile inmates arrive at the Justice Center, the SCSD conducts an intake assessment that includes administering the Test Assessing Basic Education (the "TABE"), which assesses each juvenile's achievement in all academic domains. *Nelson Dec.*, ¶ 4. The results of the TABE permit general education and special education teachers to tailor instruction to each inmate's individual level of performance. *Id.* Additionally, the SCSD's intake process includes mechanisms that ensure that inmates who qualify as students with disabilities pursuant to the IDEA receive the specialized instruction and procedural safeguards to which they are entitled. *Id.*, at ¶ 5.

B.     **The SCSD Does Not Place Inmates In The Segregated Housing Unit, And Has Not "Denied" Educational Services To Such Inmates.**

In accordance with the MOU, the Sheriff's Office is responsible for transferring youth to the SCSD's programs. *Dittmann Dec.*, Ex. 1. Following the intake process, juvenile inmates who are housed in regular housing unit typically attend school in the classrooms operated by the SCSD and receive direct instruction in all the subjects outlined in the preceding section. *Nelson Dec.*, at ¶ 6.

In accordance with its discipline policies, the Sheriff's Office regularly places inmates in the segregated housing unit located on the fifth floor of the Justice Center. *Declaration of Joshua Cotter*, Dkt. No. 5 (hereafter "*Cotter Dec.*"), Exs. 19, 20, 21. Regulations of the Department of Corrections and Community Supervision require that the Sheriff's Office permit eligible youth who are placed in segregated housing to participate in a cell study program, and to visit with teachers and other educational providers:

> Inmates in special housing units will be offered the opportunity to participate in a cell study program. However, an inmate assigned to a disciplinary housing unit will be offered the opportunity to participate in a cell study program to the extent possible based upon the inmate's overall behavioral adjustment. Education counselors, teachers or other appropriate staff members may visit the special housing inmates as needed to provide assistance to any inmate participating in a cell study program.

7 N.Y.C.R.R. § 304.11.

The Complaint does not allege that any of the Plaintiffs were placed in segregated housing by any policy or practice of the SCSD, or based on conduct in which they engaged while they were being delivered educational instruction by the SCSD. Each named Plaintiff has submitted a declaration in support of Plaintiffs' motion for class certification, and none of the declarations assert that the SCSD played any role in placing them in segregated housing. *See generally Cotter Dec.,* Exs. 1, 3, 5, 7, 9, 11, and 13. Nor do the named Plaintiffs allege that the

S.C.S.D. had any involvement in the decision to place them in segregated housing.  Nor could the Plaintiffs so allege, because SCSD does not have any involvement in the decision to place inmates in the segregated housing unit.  *Dittmann Dec.*, ¶ 7; *Nelson Dec.*, ¶ 7.  Whether an inmate is placed in regular housing or segregated housing is a decision that is solely within the authority of the Sheriff's Office.  *Id.*

The SCSD is willing to provide direct instruction to inmates in segregated housing, but it is currently unable to do so because the Sheriff's Office neither permits inmates to leave their cells to receive educational instruction, nor permits the SCSD's teachers to have direct contact with inmates in the fifth floor segregated housing block.  *Nelson Dec.*, ¶ 8; *Declaration of David Tantillo*, executed November 7, 2016 (hereafter "*Tantillo Dec.*"), ¶ 3.  However, the SCSD prepares "cell packets" for inmates throughout the time in which they are not permitted to receive direct instruction.  *Nelson Dec.*, ¶ 9; *Tantillo Dec.*, ¶ 3.  With respect to inmates who qualify as students with disabilities pursuant to the IDEA, their packets are modified, if necessary, to accommodate their unique learning needs by a certified special education teacher.  *Tantillo Dec.*, ¶ 4.

SCSD teachers attempt to deliver the cell packets to the inmates while they are in segregated housing by feeding the packets through a crack in each inmate's cell door.  *Id.*, at ¶ 5.  Often, however, the teachers are required to leave the packets with the supervising deputies.  *Id.*, at ¶ 6.  When they receive completed packets, the work is graded and added to each inmate's respective education file.  *Id.*, at ¶ 10.  Because they are not permitted to have direct contact with the inmates, the SCSD teachers cannot verify how often the cell packets actually reach the inmates, and how often the work is completed.  *Id.*, ¶ 6.

# ARGUMENT

### A. The Court Should Grant The SCSD's Motion For Summary Judgment Prior To Issuing A Determination On Plaintiffs' Motion For Class Certification.

A defendant may move for a judgment on the merits before a decision on class certification is made. *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 388 n. 1 (W.D.N.Y. 2010); *Mendez v. Radec Corp.*, 260 F.R.D. 38, 45 (E.D.N.Y. 2009); *Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 193-94 (E.D.N.Y. 2006). Indeed, "there is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion precedes resolution of the issue of class certification." *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998).

In the interest of judicial economy, the SCSD requests that the Court issue a determination with respect to the SCSD's motion for summary judgment prior to resolving Plaintiffs' motion for class certification. As explained in the following section, there is no genuine issue of material fact that the Complaint does not challenge any action, inaction, policy, or practice of the SCSD, and accordingly, the SCSD is entitled to summary judgment. Because the SCSD's motion for summary judgment will result in the resolution of Plaintiffs' claims against the SCSD on the merits, this motion should be addressed prior to Plaintiffs' motion for class certification.

### B. The SCSD Should Be Dismissed From This Action Because The Plaintiffs Have Not Challenged A Policy Or Practice Of The SCSD.

Although Plaintiffs' Complaint purports to assert claims against the SCSD based on the deprivation of educational services to the named Plaintiffs and other similarly situated juvenile inmates, the essence of this lawsuit is the constitutionality of the practice of the Onondaga

County Sheriff's Office of placing juvenile inmates in segregated housing.  The Complaint does not identify any policy or practice of the SCSD, nor does it challenge any substantive component of the educational program operated by the SCSD in its capacity as the district of location.

The case is thus fundamentally distinguishable from earlier IDEA class actions involving the provision of educational services to juvenile inmates, such as *Handberry v. Thompson*, 446 F.3d 355, 355 (2d Cir. 2006), on which Plaintiffs rely in their motion for class certification.  In *Handberry,* the plaintiffs alleged that the educational program operated by the New York City Department of Education ("NYC DOE") on Rikers Island contained numerous systemic deficiencies.  The deficiencies in the NYC DOE's program identified by the plaintiffs included: (1) an absence of procedures to inform eligible youth of their right to receive educational services; (2) a failure to reliably provide incarcerated youths with a minimum of three hours of instruction per day; (3) an absence of intake assessments in each inmate's preferred language; (4) an absence of placement options for special education students; and (5) inadequate procedures for conducting annual reviews of IEPs and re-evaluations.  *Handberry v. Thompson*, 219 F. Supp. 2d 525, 533 (S.D.N.Y. 2002).  Unlike the Plaintiffs in *Handberry*, here, Plaintiffs do not challenge any systemic deficiencies in the quality of the educational program that the SCSD is offering at the Justice Center.  Rather, Plaintiffs' Fourteenth Amendment and IDEA claims are based on the fact that the Sheriff's Office prevents eligible juvenile inmates from accessing the SCSD's educational program when they are placed in segregated housing as a disciplinary consequence.

The SCSD has not denied educational services to *any* eligible inmate, and thus cannot be liable for any deprivation of services that has occurred or will occur while those eligible inmates are placed in segregated housing.  The SCSD does not participate in the decision to place

inmates in segregated housing, and SCSD does not have the capacity to directly interact with inmates when such direct interaction is prohibited by the Sheriff's Office.  *Dittmann Dec.*, ¶ 7; *Nelson Dec.*, ¶ 7.  The MOU between the SCSD and the Sheriff's Office clearly identifies the Sheriff's Office as the agency that is responsible for "coordinat[ing] the daily transferring of youth to programming."  *Dittmann Dec.*, Ex. 1.  The SCSD has no ability to provide educational services to inmates who are not permitted to leave their cells or to directly interact with SCSD's personnel.

Not surprisingly, the only specific policies and practices that are identified in the Complaint and in the Plaintiffs' motion for class certification are the policies and practices of the Sheriff's Office.  *See Complaint*, ¶¶ 1 (noting that "the **Onondaga County Sheriff's Office** has embraced the frequent and arbitrary use of solitary confinement" and further noting that "**Sheriff's Office officials** also are denying juveniles basic educational services and programming, including services needed to address their disabilities"), 24 (emphasis added); *Cotter Dec*., Exs. 19-21.  None of these policies indicate that the SCSD participates in the decision to discipline inmates, or is responsible for prohibiting them from meeting with teachers after they have been disciplined.  There is no basis for imputing to the SCSD any policy or practice of the Sheriff's Office that impacts student's educational rights.

In short, neither the Complaint nor Plaintiffs' motion for class certification identifies any policy or practice *of the SCSD* that has resulted in a denial of educational services to inmates while they are placed in segregated housing.  Insofar as Plaintiffs have identified no conduct on the part of the SCSD that bears any causal relationship to the deprivation of educational services that is the basis for their education claims, the SCSD is entitled to summary judgment.

### C. With Respect to Plaintiffs' IDEA Claims Against the SCSD, The SCSD's Motion For Summary Judgment Should Be Granted For The Additional Reason That Plaintiffs Cannot Pursue Civil Claims For A Denial of FAPE Without First Exhausting Their State Administrative Remedies.

"It is well settled that IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004), *cert denied,* 544 U.S. 968 (2005); *see* 20 U.S.C. § 1415(i)(2)(A). "The exhaustion requirement 'prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *Polera v. Board of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002). Suit in state and federal court to enforce the IDEA typically may only be commenced after these procedures have been exhausted. 20 U.S.C. § 1415(i)(2)(A).

Plaintiffs here allege that the following conduct by the Defendants violates the IDEA: (1) the use of cell packets in lieu of classroom instruction for students in segregated housing; (2) the failure to convene a manifestation determination meeting after a student with a disability is placed in segregated housing. Plaintiffs assert that these claims are not subject to the exhaustion rule because the Complaint challenges a "systemic, not individual" violation of the IDEA, based on Defendants' "common course of conduct toward them." Dkt. No. 5-1, at 20. In so arguing, Plaintiffs appear to be relying on a narrow exception in which courts will excuse an IDEA plaintiff's failure to exhaust his or her administrative remedies because the plaintiff is asserting "that an agency has adopted a policy or pursued a practice of general applicability that is contrary to law." *See J.S. ex rel. N.S.,* 386 F.3d at 113; *Polera*, 288 F.3d at 488-89; *R. A-G ex rel R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*, 12-cv-960S, 2013 U.S. Dist. LEXIS 93924

(W.D.N.Y. July 30, 2013); *Kalliope R. Ex rel. Irene D. v. N.Y.S. Dep't of Educ.*, 827 F. Supp. 2d 130, 138 (E.D.N.Y. 2010).

The critical fact that differentiates all of the above cases from the instant case is that *all* of the above cases challenged a policy or practice of the school district. The plaintiffs in *J.S. ex rel. N.S.* challenged a policy and practice of the Attica Central School District of "fail[ing] to prepare and implement Individualized Education Programs" for students with disabilities. *See J.S. ex rel. N.S.,* 386 F.3d at 115. The plaintiffs in *R. A-G ex rel R.B.* alleged that "Defendants [the Buffalo City School District and that district's Superintendent of Schools] maintain and implement a policy by which the District does not provide the related services to be provided via students' IEPs during the first two weeks of the school year (or longer), irrespective of any individual student's need for such related services at the inception of the school year." *R. A-G ex rel R.B*, 2013 U.S. Dist. LEXIS 93924 at *9-10. In *Andrew M.*, the plaintiffs alleged that "NYSED has adopted a policy that violates IDEA by circumventing the IEP development process." *Kallipe R.*, 827 F. Supp. 2d at 139. The Eastern District of New York held that exhaustion could be excused because 'the focus of this case will be on NYSED's alleged policy, not whether a particular IEP is appropriate for a particular student." *Id.*

Finally, in *G.F. v. Contra Costa Cnty*, the Northern District of California certified a class of IDEA inmates for settlement purposes because the complaint specifically challenged policies of the school district that systemically interfered with the inmates' IDEA rights. As the court noted, the plaintiffs in *G.F.* specifically alleged that:

> Defendants have no policies specific to Juvenile Hall to identify students who may have a disability (i.e., "Child Find" policies) as mandated by law, but rather only have a policy to offer special education to students "already identified as having a disability." . . . Plaintiffs contend Defendants fail to identify students with disabilities who enter Mt. McKinley but may not yet have been

> identified as having a disability.  Plaintiffs allege there is only one placement option for students with disabilities in Juvenile Hall: the general education classroom setting (i.e., the regular classroom), and further allege there is no special day class that would provide full-time (or even part-time) special education instruction . . . Plaintiffs also contend that Individualized Education Plans ("IEPs") are legally required for youth with disabilities, but assert Defendants have an established policy of simply disregarding those requirements, noting that the IEPs in Juvenile Hall are strikingly similar regardless of the students' varying disabilities, needs, and previous IEPs . . . Plaintiffs contend Defendants have no records to establish they are complying with their legal obligations and do not track whether the required minutes are provided to each student who is entitled to specialized academic instruction.

*G.F. v. Contra Costa Cnty*, 13-cv-03667, 2015 U.S. Dist. LEXIS 100512, * 9 (N.D. Cal. July 30, 2015).

The instant complaint, conversely, does not challenge any policy or practice of the SCSD. Rather, as set forth above, the policies and practices challenged in this proceeding are all maintained by the Sheriff's Office.  To the extent that Plaintiffs are alleging that the SCSD fails to conduct a manifestation determination prior to placing IDEA-eligible inmates in segregated housing, there is no genuine issue of fact that the termination of direct educational services to such inmates is due to *neither* a policy nor a practice of the SCSD.  *Nelson Dec.*, ¶ 7.  Rather, it is the Sheriff's Office that singlehandedly changes an inmate's placement from regular to segregated housing.  *Id.*  Likewise, to the extent that Plaintiffs allege that the cell packets are a poor substitute for direct instruction, there is no genuine issue of fact that the use of cell packets in lieu of direct instruction is due to *neither* a policy nor a practice of the SCSD.  Indeed, the Sheriff's Office does not permit SCSD personnel to have direct contact with such inmates and cell packets are the only educational support that is permitted.  *Nelson Dec.*, ¶ 8; *Tantillo Dec.*, ¶ 3.

To the extent that the Plaintiffs R.C. and F.K. believe that the instruction that they have received from the SCSD has not complied with the IDEA, they are required to exhaust their administrative remedies. Accordingly, with respect to Plaintiffs' IDEA claims, the SCSD's motion for summary judgment should be granted for the additional reason that Plaintiffs cannot pursue such claims in this forum against the SCSD without first exhausting their state administrative remedies.

### D. For The Reasons Set Forth Above, Plaintiffs' Motion for Class Certification Should Be Denied To The Extent It Seeks To Certify A Class Or Subclass With Respect To Any Claims Against The SCSD.

For the reasons set forth above, the Court should deny Plaintiffs' motion to certify a class or subclass with respect to any claims against the SCSD. The SCSD's practice is to provide direct instructional services to every eligible inmate with whom the Sheriff's Office allows SCSD teaching personnel to interact. *Nelson Dec.*, ¶ 11. Any deficiency in the quality of and/or quantity of educational services that is being provided to inmates who are placed in segregated housing is due to the policies and practices of the Sheriff's Office, which prohibit SCSD personnel from providing direct instruction to such inmates, either in their cells or out of their cells.

### CONCLUSION

The Court should grant the SCSD's Motion for Summary Judgment, and deny Plaintiffs' Motion for Class Certification with respect to Plaintiffs' claims against the SCSD.

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

Dated:  November 10, 2016        By:   */s/ Jonathan B. Fellows*
                                      Jonathan B. Fellows (101628)
                                      Kate I. Reid (517408)
                                Office & P.O. Address:
                                One Lincoln Center
                                Syracuse, New York 13202
                                Telephone:  (315) 218-8000
                                Facsimile:  (315) 218-8100
                                Email:  jfellows@bsk.com
                                Email: kreid@bsk.com

                                *Attorneys for Defendant the Syracuse City School District*