UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

V.W., a minor, by and through his parent   :
and natural guardian DERECK WILLIAMS,   :
et al., on behalf of themselves and all others   :
similarly situated,   :
                    Plaintiffs,   :          16-CV-1150 (DNH) (DEP)
           v.   :

EUGENE CONWAY, Onondaga County Sheriff,   :
in his official capacity, et al.   :
  :
  :
                 Defendants.   :

------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SYRACUSE CITY SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

Philip Desgranges
Mariko Hirose
Mariana Kovel
Aadhithi Padmanabhan
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004

Joshua T. Cotter
Susan M. Young
Samuel C. Young
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202

Aimee Krause Stewart
SANFORD HEISLER, LLP
1666 Connecticut Avenue NW, Suite 300
Washington, D.C. 20009

DATED: December 13, 2016
       Syracuse, N.Y.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT…………………………………….......................1

PROCEDURAL HISTORY …………….....………………………....…………… 2

FACTS………………………………………………………………………....... 3

   A. Systemic Violations Exist……………………………………………... 3
   B. The District Has Been Aware of Systemic Violations but has Done Nothing to
      Correct Them…………………………………………………………..… 5

ARGUMENT……………………………………………………………………. 7

   I.       STANDARD FOR SUMMARY JUDGMENT……………………….. 7
   II.     THE DISTRICT'S OBLIGATION UNDER STATE AND FEDERAL
         LAW……………………………………………………………………… 8
   III.    IT IS UNDISPUTED THAT THE PLAINTIFFS ARE BEING DEPRIEVED
         OF MANDATED EDUCATIONAL INSTRUCTION AND PROCEDURAL
         PROTECTIONS THEY ARE ENTITLED TO UNDER IDEA, NEW YORK
         LAW AND THE FOURTEENTH AMENDMENT………………………… 9
   IV.    THE DISTRICT FAILS TO ESTABLISH AT THIS EARLY STAGE THAT
         IT BEARS NO RESPONSIBILITY FOR THE UNDISPUTED DENIAL OF
         EDUCATIONAL SERVICES AND PROCEDURAL
         PROTECTIONS…………………………………………………………10
         a.  The District Fails to Identify Any Legal Authority for its Argument that it
             Cannot be Held Responsible for the Undisputed Violations of Plaintiffs'
             Statutory and Constitutional Rights……………………………………12
         b.  The Record Fails to Establish that the School District Cannot Meet its
             Legal Obligations……………………………………………………………13
         c.  Under Rule 56(d), The School District's Claim About "Causation"
             Is A Factual Assertion That Is Not Properly Resolved by Summary
             Judgment at this Stage of the Proceeding…………………………………17
             i.     Facts Sought to Oppose the Motion and How They are to be
                  Obtained……………………………………………………………..18
             ii.    Evidence Adduced in Discovery will Create Genuine Issues of
                  Material Fact……………………………………………………………19
             iii.   Efforts by Plaintiffs to Obtain Discovery…………………………20
   V.     EXHAUSTION IS NOT REQUIRED BECAUSE PLAINTIFFS
         CHALLENGE A SYSTEMIC FAILURE TO PROVIDE
         EDUCATIONAL SERVICES AND PROCEDURAL PROTECTIONS…......20

# TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................................................... 8,17

*Cash v. County of Erie*,
654 F.3d 324, (2d Cir. 2011) ……………………………………………………………11

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
352 F.3d 775, (2d Cir. 2003) …………………………………………………………...3,14

*FL ex rel. FL v. NYC Dep't of Educ.*,
2012 U.S. Dist. LEXIS 149296 (S.D.N.Y. Oct. 16, 2012) .............................................. 13

*Graham v. Long Island R.R.*,
230 F.3d 34, (2d Cir. 2000) .......................................................................................... 8

*Gurary v. Winehouse*,
190 F.3d 37, (2d Cir. 1999) ....................................................................................... 17

*Handberry v. Thompson*,
446 F.3d 335, (2d Cir. 2006) ...................................................................................... 21

*Handberry v. Thompson*,
92 F. Supp. 2d 244, (S.D.N.Y. 2002) ............................................................................. 9

*Heldman v. Sobol*,
962 F.2d 148, (2d Cir. 1992) ...................................................................................... 21

*Hellstrom v. United States Dep't of Veterans Affairs*,
201 F.3d 94, (2d Cir. 2000) .................................................................................... 8,17

*J.S. ex rel N.S. v. Attica Cent. Sch.*,
386 F.3d 107, (2d Cir. 2004) .................................................................................. 20,21

*Jeffes v. Barnes*,
208 F.3d 49, (2d Cir. 2000) ...................................................................................... 18

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701, (1989) ............................................................................................... 18

*Looney v. Black*,

702 F.3d 701, (2d Cir. 2012)............................................................................... 9

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658, (1978)……………………………………………………………………..11

*Trammell v. Keane*,
338 F.3d 155, (2d Cir. 2003)............................................................................ 17

*Wright v. N.Y. State Dep't of Corr Servs.*,
831 F.3d 64,  (2d Cir. 2016)............................................................................... 8

**Statutes:**

20 U.S.C. § 1414(d) ........................................................................................... 9

20 U.S.C. § 1412(a)(12) .................................................................................... 9

20 U.S.C. § 1412(a)(12)(B) .............................................................................. 8

20 U.S.C. § 1415(k)(1)(E) ................................................................................. 9

20 U.S.C. §§ 1401(9) ........................................................................................ 9

N.Y. Educ. L. § 3202(7) .................................................................................... 9

**Other Authorities:**

34 C.F.R. § 300.154(b) (2)............................................................................... 12

Fed. R. Civ. Proc 56(a) ................................................................................. 8,12

Fed. R. Civ. Proc. 56(d) ........................................................................... passim

N.Y. Comp. Code R. & Regs., tit. 9 § 7070.3 ................................................. 9

N.Y. Comp. Code R. & Regs., tit. 9 §§ 7070.1-7070.2).................................. 9

NY Comp. Codes R. & Regs, tit 8, § 200.2 .................................................... 13

**Preliminary Statement**

This civil rights action challenges, among other things, practices of the Onondaga County Sheriff's Office ("Sheriff's Office") and the Syracuse City School District ("District") that deprive juveniles held in solitary confinement of their right to receive an education pursuant to the Individuals with Disabilities Education Act ("IDEA"), and New York law which is protected by the Due Process Clause of the Fourteenth Amendment.

Before formal discovery has even begun, the District has moved for summary judgment on these claims. In doing so, the District does not dispute the existence of any of these statutory and constitutional breaches.  Instead, the District claims that it is not legally or factually responsible because the Sheriff allegedly interfered with the District's performance of its duties.

As the Second Circuit has explained, the granting of summary judgment before discovery is appropriate "[o]nly in the rarest of cases," and this plainly is not one of those cases.  The District's motion fails first because the District cites no authority establishing that the actions of a third party such as the Sheriff vitiate the District's otherwise undisputed legal obligations. Beyond that, even if the Sheriff's actions could somehow diminish the District's legal responsibility for the undisputed violations so long as the District made every reasonable effort to meet that responsibility, the record before this Court must be construed as establishing that the District has done nothing to work around or remove any obstacles the Sheriff may have created.  Finally, the issue of which policies and practices --- the District's or the Sheriff's or both --- caused the undisputed violations is a quintessential issue of fact, making granting summary judgment inappropriate before normal discovery.

1

The District also argues for summary judgment based on an asserted failure by plaintiffs to exhaust administrative remedies, but exhaustion is not required because plaintiffs pled systemic violations.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on September 21, 2016, asserting class claims challenging the solitary confinement of 16- and 17-year-olds at the Onondaga County Justice Center (the "Justice Center").[1] In addition to challenging the solitary confinement of juveniles, plaintiffs challenge the policies, practices, and customs of the defendants that (1) deprive eligible juveniles of mandatory educational opportunities without due process; and (2) deprive juveniles with disabilities of a free and appropriate public education ("FAPE") and procedural protections guaranteed by federal law.[2]

On September 23, 2016, plaintiffs moved for class certification.[3] The District answered the Complaint on October 13, 2016. District Answer, Dkt. No 16.  The parties agreed on an expedited discovery schedule related to plaintiffs' anticipated motion for a preliminary injunction.[4] Plaintiffs requested only those documents necessary for their preliminary injunction motion, which, as pertains to the District, were primarily limited to the educational and special educational records of the plaintiffs and other juveniles at the Justice Center.[5]  The District submitted its opposition to plaintiffs' class certification

---

[1] Complaint, Dkt. No. 1.
[2] Dkt. No. 1 ¶¶ 58-67.
[3] Dkt. No 5.
[4] Dkt. No. 23.
[5] *Id.*

motion and moved for Summary Judgment on November 11, 2016.[6]  The parties agreed

on a discovery schedule on December 9, 2016.[7]

## FACTS

On a motion for summary judgment, the Court must "construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw

all reasonable inferences against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*,

352 F.3d 775, 780 (2d Cir. 2003).  Applying these well-established principles to the

record before the Court, two principal facts are uncontroverted:  (1) The District has long

been aware that juveniles being held in solitary confinement at the Justice Center do not

receive educational services mandated by federal and state law and do not receive

procedural protections mandated by statute and the Constitution; and (2) notwithstanding

knowledge of these systemic violations, the District has done nothing to ensure students

are provided the legally required educational services.

*A. Systemic Violations Exist*

Children at the Justice Center may experience solitary confinement in their cells

on their regular housing unit or in the segregation housing unit ("SHU" or "the Box") on

the fifth floor.[8]   When in solitary confinement juveniles spend 23 hours a day locked in

---

[6] Dkt. No. 7.
[7] Fed. R. Civ. Proc. 56(d) Declaration of Plaintiffs' Counsel Joshua Cotter ¶ 9.
[8] Cotter Decl., Dkt. No. 5-3, September 22, 2016; V.W. Decl., ¶¶ 5-6, Sept. 13, 2016, attached as Ex. 1 to Cotter Decl;  R.C. Decl. ¶ 5,  Sept. 13, 2016, attached as Ex. 3 to Cotter Decl.; C.I Decl. ¶¶ 8-9, Sept. 13, 2016, attached as Ex. 5 to Cotter Decl.; M.R. Decl.. ¶ 10, Sept. 13, 2016, attached as Ex. 7 to Cotter Decl.; J.P.  Decl. ¶ 6, Sept.13, 2016, attached as Ex. 11 to Cotter Decl.

their cell.[9] Whether in locked in their own cell or the Box, juveniles do not receive any

direct educational instruction.[10]  Juveniles held in solitary confinement do not receive a

notice that their placement in solitary will result in a denial of educational instruction.[11]

In place of the legally required educational instruction, juveniles in solitary confinement

at best receive only a "cell packet" of educational materials.[12] The cell packets are given

to juveniles sporadically; they are unable to ask questions on how to complete the

assignments; and they receive no direct instruction.[13] As a result, many juveniles are

unable to complete the work.[14] When a juvenile does complete a packet, it is often not

collected.[15]  If it is collected, the juvenile is not informed if it has been graded or if he or

she will receive credit for the work.[16] The use of cell packets is especially troubling for

juveniles with disabilities who are not provided with a FAPE in accordance with their

---

[9] V.W. Decl., ¶¶ 5-6; M.R. Decl.. ¶ ¶ 7,9,10; J.P. ¶ 6; R.C. Decl. ¶¶ 5, 9; C.I. Decl. ¶ 13;
*See* M.S. Decl. ¶ 14, attached as Ex. 4 to the Young Decl., Nov. 18, 2016; *see* also Kraus
Decl. Dkt. No. 5-2, ¶¶ 26, 44, September 19, 2016.

[10] L.R. 7.1 Statement ¶ 20 (citing Nelson Decl. Dkt No. 28-5, ¶¶ 7-9, Nov. 7, 2016
(Referencing the SHU); Onondaga Cty. Leg. Ways & Means Comm., 2016 Budget
Review of Pub. Safety Comm. Dep'ts ("Leg. Meeting Minutes"), Sept. 24, 2015, pg 15,
attached as Ex. 30 to Cotter Decl; V.W. Decl. ¶ 7(Both); R.C. Decl. ¶ 6 (SHU); C.I. Decl.
¶ 11(Both); M.R. Decl. ¶ 14 (Both); F.K. Decl. ¶¶ 7-8 (SHU), Sept. 13, 2016, attached as
Ex. 9 to Cotter Decl; J.P. Decl. ¶ 9 (Both).)

[11] L.R. 7.1 Statement ¶ 21 (citing Answer of the County Defendant ¶4; F.K. Decl. ¶¶ 7-8;
R.C. Decl. ¶¶ 6-7; R.C. Supp. Decl. ¶14;  J.S. Decl. ¶15.)

[12]  *See* M.S. Decl. ¶ 10; C.B. Decl. ¶ 14, Nov.18, 2016, attached as Ex. 2. to Young Decl.;
D.D. Decl. ¶ 14, Nov. 30, 2016, attached as Ex. 1. to Young Decl.; M.R. ¶ 12; C.I. ¶ 11;
J.S. Decl., ¶ 15, Nov. 15, 2016, attached as Ex. 3. to Young Decl.; V.W.  Decl. ¶ 7.

[13] M.S. Decl. ¶ 10; R.C. Decl. ¶ 7; C.I. Decl. ¶ 11; J.P. ¶ 9.

[14] L.R. 7.1 Statement ¶ 22(citing Answer of the County Defendant, ¶15;V.W. Dec., ¶7;
C.I. Dec. ¶11; C.B. Decl. ¶ 14; F.K. Decl. ¶ 8; M.R. Dec. ¶14; J.S. Decl. ¶15; Tantillo
Decl. ¶10.)

[15] L.R. 7.1 Statement ¶ 23 (citing Answer of the County Defendant, ¶ 15; V.W. Dec., ¶7;
C.I. Dec. ¶11; C.B. Decl. ¶14; M.R. Dec. ¶14; D.D. Decl. ¶ 14; Tantillo Dec. ¶10.)

[16] *Id*.

Individualized Education Plan (IEPs), and are denied the procedural protections of the IDEA.[17]

The systemic apathy of the District toward educating incarcerated juveniles is demonstrated by the fact that no juvenile, regardless of disciplinary status, receives the three hours of educational instruction per school day required by state law.[18] Indeed, the District in its motion does not even address the education of juveniles in lock-in.[19] Thus, as to children in lock-in, all of plaintiffs' allegations must be deemed admitted.[20]

From October 2015 to October 2016, of the 88 juveniles who were at the Justice Center long enough to become eligible to receive educational instruction, 77% served time in solitary confinement.[21]  The juveniles that make up that 77% missed, at minimum, 897 days of instruction because they were in solitary confinement.[22]

   B.  *The District Has Been Aware of Systemic Violations but Has Done Nothing to Correct Them*

From the declarations of its own employees, it is clear that the District is aware of the systemic violations of Plaintiffs' constitutional and educational rights.[23]  Yet, the

---

[17] L.R. 7.1 Statement ¶ 29. (citing Kraus Decl., Dkt.5-2, ¶63; Supplemental Declaration of Dr. Louis J Kraus ("Kraus Supp. Decl.") ¶11-12; Tantillo Dec. ¶4; F.K. Decl. ¶¶ 7-8; R.C. Decl. ¶¶ 6-7.)

[18] L.R. 7.1 Statement ¶ 8 (citing J.S. ¶ 4; C.B. ¶ 7; V.W. Decl. ¶ 7; J.C.P Decl. ¶ 8.)  *see also, e.g.,* "Inmate Activity History" of M.R., C.I. and V.W. attached to Young Decl. as Exhibit 6 (Indicating that no week during their stay at the Justice Center did they receive 15 hours of school per week)

[19] Def's Br. Pgs. 5-6.

[20] After plaintiffs filed this lawsuit, juveniles in lock-in may have been allowed out of their cells for short periods of instruction.  L.R. 7.1 Statement¶ 26 (citing D.D. Decl. ¶ 5.)

[21] L.R. 7.1 Statement ¶ 30 (citing Supplemental Declaration of Michelle Shames ("Shames Suppl. Decl.") ¶ 8.)

[22] *Id.*

[23] L.R. 7.1 Statement ¶ 27 (citing Nelson Decl. ¶ 11; Tantillo Decl. Dkt. No. 28-2 ¶ 4, November 7. 2016; Dittmann Decl. Dkt. No. 28-3, ¶ 9, November 7, 2016; D.D. Decl. ¶

District offers no proof that it has taken any action to require the Sheriff's Office to live up to its constitutional and statutory duties.[24] District employees do not claim to have tried to gain access to students in solitary or to supply them with a FAPE or indeed to do anything beyond supplying the woefully inadequate cell packets.[25]  Instead, the District remained silent while the children in solitary confinement were deprived of educational instruction for months.[26]

The District's failure to act in the face of acknowledged constitutional and statutory violations is also demonstrated by its passivity with respect to the Memorandum of Understanding ("MOU") governing the provision of educational services by the District and the Sheriff's responsibilities with respect to those services. The District and the Sheriff first entered into an MOU in August 2013.[27]  When the District entered into a new MOU in August 2016, it was undoubtedly aware of the Sheriff's practice of denying the District access to children in the SHU.[28]  While plaintiffs contend that the current MOU cannot logically be interpreted to deny the District access to juveniles in solitary, to the extent that the District so interprets it, the District offers no proof that it requested changes in the MOU that would allow it to fulfill its obligations, further undercutting the District's suggestion that it has done everything possible to assure compliance.

---

5; V.W. Decl. ¶ 7; R.C. Decl. ¶¶ 6, 7; C.I. Decl. ¶11; M.R. Decl. ¶¶13-14; F.K. Decl.¶¶ 7-8; J.P. Decl. ¶9.)

[24] L.R. 7.1 Statement ¶ 28(citing Nelson Decl.  ¶ 11; Tantillo Decl. ¶¶ 4,6,8; Dittmann Decl. ¶ 9; D.D. Decl. ¶ 5; V.W. Decl. ¶ 7; R.C. Decl. ¶¶ 6, 7; C.I. Decl. ¶11; M.R. Decl. ¶¶13-14; F.K. Decl.¶¶ 7-8; J.P. Decl. ¶9.)

[25] *Id.*

[26] *Id.*

[27] Dittmann Decl. ¶ 4

[28] *See* Dittmann Decl. ¶¶ 7-10; Dittmann Decl. Ex. 1.

Further, the current MOU should not be interpreted to allow the Sheriff to deny access to students in solitary.  With no exception for children in solitary, it requires that the Sheriff's Office "[p]rovide access to appropriate classroom and instructional space for the safe delivery of the educational programs" and in no way authorizes the Sheriff's Office to interfere with the District's educational instruction.[29] Indeed the MOU states that it "is not meant to create any obligations that replace, diminish, augment, or supersede any party's legal obligations."[30]  Despite the presence of these provisions, which protect the District's right to enforce the Sheriff's obligation not to interfere with the provision of educational services, the District offers no evidence that it sought to require the Sheriff to live up to his obligations.

Finally, the District offers no proof of any attempt to offer meaningful instruction to students even within the bounds of the Sheriff's alleged intransigence by, for instance, providing instruction by video-conferencing, telephone, or computer. The sole efforts the District cites is the attempted delivery of "cell packets" which, as described in detail above are rife with deficiencies.[31]  It thus has offered no proof that the Sheriff is solely responsible for the Constitutional and statutory violations complained of in this lawsuit and therefore has failed to meet their burden on summary judgment.

<u>**Argument**</u>

**I.  STANDARD FOR SUMMARY JUDGMENT.**

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a

---

[29] Dittmann Decl. Ex 1, ¶ 2(c).
[30] *Id.* Ex. 1, ¶ 3.
[31]*See* Pg. 4 *supra*; Kraus Suppl. Decl. ¶¶ 12-13; 22-13.

matter of law".  Fed. R. Civ. Proc 56(a).  The moving party bears the initial burden of showing there is no genuine issue of material fact in dispute.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).  If the Court finds that the initial burden is met, then the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial," and present such evidence as would allow a jury to find in its favor.  *Id.* at 255-56; *see also Graham v. Long Island R.R*., 230 F.3d 34, 38 (2d Cir. 2000).  In assessing whether there is a genuine issue for trial the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Wright v. N.Y. State Dep't of Corr Servs.,* 831 F.3d 64, 71-72 (2d Cir. 2016).

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *Trammel v. Keane*, 338 F.3d 155, 161 n.2 (2d. Cir. 2003.)  The non-moving party must be granted an opportunity to discover information necessary to its defense of the motion.  *See Anderson*, 477 U.S. at 250 n.5 (1986).  Federal Rule of Civil Procedure Rule 56(d), formerly Rule 56(f), allows the court to deny summary judgment if the non-moving party has not had an adequate opportunity for discovery.  *See id.*

## II. THE DISTRICT'S OBLIGATIONS UNDER FEDERAL AND STATE LAW.

### A. IDEA

Under the IDEA, the District and the Sheriff share an obligation to provide juveniles with disabilities a FAPE, including the receipt of special education and related services conforming to their IEPs.  *See* 20 U.S.C. § 1412(a)(12)(B) (providing that Local Educational Agencies ("LEAs") such as the District have the ultimate responsibility for

ensuring that children with disabilities receive the education and services provided for in

their IEPs); 20 U.S.C. § 1412(a)(12) (allowing states to provide for public entities other

than LEAs to furnish IDEA services); 20 U.S.C. §§ 1401(9) (defining FAPE to require

services set forth in the IEP); 1414(d) (defining IEP); N.Y. Comp. Code R. & Regs., tit. 9

§ 7070.3 (placing obligation on chief administrative officer of each local correctional

facility to coordinate with the LEA to provide appropriate educational services).

IDEA also places an obligation on the local educational agency (here the  District)

to conduct a manifestation hearing to determine whether a student's misconduct was a

manifestation of his disability before excluding the student from the classroom for more

than ten consecutive days, or ten non-consecutive days in a school year based on a pattern

of similar behavior.  20 U.S.C. §1415(k)(1)(E).

### B.  Fourteenth Amendment Due Process Clause

To merit procedural protection under the Due Process Clause of the Fourteenth

Amendment, a litigant must show that he or she has a property interest cognizable under

state law.  *See Looney v.* Black, 702 F.3d 701, 706 (2d Cir. 2012). Plaintiffs have a

property interest in three hours per school day of educational instruction derived from

New York State laws and regulations.  This property interest is protected by the Due

Process Clause of the Fourteenth Amendment.  *See Handberry v. Thompson*, 92 F. Supp.

2d 244, 248(S.D.N.Y. 2002) (citing N.Y. Educ. L. § 3202(7) and N.Y. Comp. Code R. &

Regs., tit. 9 §§ 7070.1-7070.2), *aff'd in part, vacated on other grounds and remanded*,

446 F.3d 335 (2d Cir. 2006).

### III. IT IS UNDISPUTED THAT THE PLAINTIFFS ARE DEPRIVED OF MANDATED EDUCATIONAL INSTRUCTION AND PROCEDURAL PROTECTIONS UNDER IDEA, NEW YORK LAW, AND THE FOURTEENTH AMENDMENT

In moving for summary judgment, the District does not attempt to rebut the plaintiffs' claims of educational and procedural violations. To the contrary, for purposes of this motion, it is undisputed that those deprivations occur, with the only question before the Court being responsibility for those systemic violations. Because plaintiffs claimed that they did not and do not receive a FAPE while in solitary confinement, Compl. ¶¶ 64-66, and the District concedes that point, Answer Dkt. No. 16, ¶ 64, it is established for purposes of this motion that plaintiffs do not receive a FAPE while in the SHU or lock-in.[32] Because plaintiffs allege that they have not and do not receive manifestation hearings before removal from the classroom for more than ten days, Compl. ¶ 67, and the District admits this allegation, Answer, ¶ 67,[33] it is established for purposes of this motion that plaintiffs do not receive the required manifestation hearings.

With reference to the Due Process claims, the Complaint alleges that plaintiffs do not receive the required amount of instruction, Compl. ¶ 60, and the District admits this allegation, Answer, ¶ 60.  For purposes of this motion, it is therefore established that juveniles in solitary do not receive three hours of instruction per school day.

**IV. THE DISTRICT FAILS TO ESTABLISH AT THIS EARLY STAGE THAT IT BEARS NO RESPONSIBILITY FOR THE UNDISPUTED DENIAL OF EDUCATIONAL SERVICES AND PROCEDURAL PROTECTIONS.**

---

[32] *See* District Answer ¶ 64(Admitting the students with disabilities in solitary confinement do not receive direct instruction and admitting teachers do not provide direct reading instruction to students with disabilities)

[33] The Department of Education (DOE) interprets the disciplinary protections of manifestation hearings to apply "regardless of whether a student is subject to discipline in the facility or removed to restricted settings such as confinement to a student's cell. . . or 'lockdown units'."  *See* Melody Musgraves & Michael Yudin, "*Dear Colleague*" Letter U.S. Dep't of Educ. (December 5, 2014) pg. 16, available at: https://www2.ed.gov/policy/gen/guid/correctional-education/idea-letter.pdf

While the District does not dispute that the plaintiffs' statutory and constitutional rights are being violated, it argues it cannot be held responsible for those violations. Specifically, the District contends that its policies and practices are not the cause of the violations. Def's Br. at 2 ("Neither the Complaint nor Plaintiffs' Motion for Class certification alleges that the District maintains a policy or practice that bears any causal relationship to the allegedly inadequate educational services that are the basis for plaintiffs' claims against the [District]").[34]

Under the well-established standards of Rule 56, this argument fails for several reasons.  First, the District does not identify any legal authority that its educational and procedural obligations cease if Justice Center officials do not cooperate. Second, to the extent that the District's obligations are satisfied if it does everything possible to provide services and still fails, the record submitted by the District, with all reasonable inferences drawn against it, falls far short of demonstrating that it has made every reasonable effort to provide the procedures and services required by law.  Finally, the District's "causation" defense is especially fact intensive and, under Rule 56(d), is particularly inappropriate to be resolved on summary judgment before discovery.

---

[34] The District does not argue plaintiffs have not identified a policy or practice necessary to establish *Monell* liability, and any such argument would fail. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 695 (1978). The practice plaintiffs allege is a total failure of the District to provide the educational instruction required by law.  The District's pervasive failure to provide any juvenile in solitary confinement with the instruction is undoubtedly a municipal policy for *Monell* purposes. *See Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction.  In the latter respect, a 'city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the by the city itself to violate the Constitution.") (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).

**A. The District Fails to Identify Any Legal Authority for its Argument that it Cannot be Held Responsible for the Undisputed Violations of Plaintiffs' Statutory and Constitutional Rights.**

A court may grant summary judgment only if the moving party shows it is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(a). Tellingly, the District cites no case law, statute, or regulation to support its position that it is relieved of its obligation to educate the juveniles held in solitary confinement because the Sheriff denies it access to the children. The slightly more than two pages of its brief devoted to arguing that the District is not responsible for the admitted violations cite no statute, regulation, or case indicating that the interference of a third party excuses a LEA from IDEA compliance. *See* Def's Br. at 7-9.

The relevant statutes and regulations establish the opposite --- that the District's obligation to comply with IDEA and New York Education Law and implementing regulations is not dependent on any other party's compliance with the law. While Section 1412(a)(12) of IDEA allows States to mandate the direct provision of IDEA services by governmental agencies other than school districts, Subsection (B) of Section 1412(a) (12) squarely places on local educational agencies ("LEAs") such as the District an unqualified duty to provide these services, providing that "[i]f a public agency other than an educational agency fails to provide or pay for the special education and related services . . . the local educational agency . . . shall provide or pay for such services to the child." ). The implementing regulation, 34 C.F.R. § 300.154(b) (2), similarly provides: "If a public agency other than an educational agency fails to provide or pay for the special education and related services described in paragraph (b)(1) of this section, the LEA . . . must provide or pay for these services to the child in a timely manner." In New

York, local school districts are the LEAs and as such, must ensure provision of a free appropriate public education. *FL ex rel. FL v. NYC Dep't of Educ.*, 2012 U.S. Dist. LEXIS 149296 (S.D.N.Y. Oct. 16, 2012), * 16 (citing NY Comp. Codes R. & Regs, tit 8, § 200.2).[35]

School districts are also primarily responsible for ensuring that incarcerated youth receive three hours of education per school day. *See* N.Y. Comp. Codes R. & Regs, tit 8 § 118.1 (placing responsibility for all educational services to incarcerated youth on the local school district). Reflecting the responsibility imposed by federal and state law, the MOU agreed to by both defendants states that "each party will provide its services as required by law" and that the MOU "is not meant to create any obligations that replace, diminish, augment, or supersede any party's legal obligations." MOU ¶ 3. Therefore, the District has failed to meet its burden of demonstrating as a matter of law that it can be relieved of its obligation by statute or regulation.

### B. The Record Fails to Establish that the School District Cannot Meet its Legal Obligations.

---

[35] It is noteworthy that the United States Department of Justice ("DOJ") and the Department of Education agree that school districts cannot avoid their responsibilities under the IDEA even where a memorandum of understanding between the district and a local correctional facility gives the facility the sole authority to discipline the juveniles incarcerated at the facility. *See G.F. v. Contra Costa County*, Case No. 3-13-cv-03667-MEJ (N.D. Cal.) Statement of Interest ("SOI") of the United States of America, Doc. 159, at 9 (attached to Cotter Decl. as Ex. 35). The DOJ and the Department of Education's position, which is entitled to deference, *see Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880 (2011**),** was that an LEA could not "escape its legal obligations by contracting or delegating them to another entity, or by allowing another entity *to interfere with carrying out its responsibilities.*" SOI at 10 (emphasis added). Its position is even more persuasive in this case where the memorandum of understanding between the District and the Sheriff does not allow the Sheriff to interfere with the District's statutory duties or excuse either party from carrying out its legal duties.

The District appears to assert that --- in the face of the Sheriff's intransigence --- it is doing its best to provide mandated educational services. Def's Br. at 6. Because this is assertion is factual, this Court must construe the record in favor of plaintiffs as the non-moving parties, drawing all inferences and resolving all ambiguities in their favor. *See Dallas Aerospace*, 352 F.3d at 780. And given that standard, the Court should deny the District's motion because the record must be construed as establishing that the District has made no effort to remove any obstacles the Sheriff may have placed in its way.

The record demonstrates that it has now been over a year since the District started furnishing educational services at the Justice Center.[36] For most if not all of this time, the District has been aware that the Sheriff's Office would allegedly not allow District personnel access to juveniles in solitary. *See* Nelson Decl. ¶ 11 ("It is the practice of the SCSD to provide direct instructional services to every juvenile inmate with whom the Sheriff's Office allows teaching personnel to interact. Inmates in segregated housing do not receive direct instruction because the Sheriff's Office will neither permit such inmates to leave their cells to meet with a teacher, nor permit teachers to interact with such students in their cells."); Tantillo Decl. ¶ 4 (indicating that he may modify a cell packet for a student who needs a calculator by eliminating any assignments that require computation because students with disabilities are not allowed by the Sheriff's Office to have calculators in segregated housing), ¶ 6 (stating that when required by deputies to drop off packets rather than deliver them to inmates' cells, he has no way of knowing whether the students ever receive the packets) ¶ 8 (indicating a tacit acceptance of Sheriff's decision not to allow delivery of packets at all); Dittmann Decl. ¶ 9 ("The

---

[36] *See* Verified Petition & Compl. & Supporting Papers, *T.S.* v. Conway (Dec 15. 2015), attached as Ex. 38 Cotter Decl. pg. 15 ¶ 3.

Sheriff's Office does not permit youth who are placed in segregated housing to leave their cells to receive educational instruction, or to have any direct interactions with [District] personnel.").

The District has passively stood by while the Sheriff's Office denied and continues to deny them access to juveniles in solitary confinement. First, despite the District's knowledge of the Sheriff's failures to provide the incarcerated youth with access to education, the District offers no evidence that it pressed for alternative methods of providing the required direct instruction, such as contact by telephone or via computer. Therefore, under applicable summary judgment principles, the record must be construed to establish that it has not sought to offer alternative means of instruction.

Second, the District entered into a new MOU with the Sheriff's Office in August 2016, at a time when District officials knew the Sheriff's Office was denying them access to juveniles in solitary.  However, the District offers no evidence that it sought to renegotiate the MOU to ensure its access to the confined juveniles. Therefore, the record must be construed to establish that the District did not seek to negotiate a more appropriate MOU.

Third, the District does not offer any evidence that it complained to the New York State Department of Education or to the entities that monitor the Justice Center about the Sheriff's failure to permit the District to fulfill its statutory duties.  Finally, there is evidence in the record that suggests that the Sheriff's Office may have been open to advice or advocacy from the District as to the delivery of educational services; however

the record establishes that no such efforts were attempted.[37]  Thus, even if the District's duty were not absolute, which it is, it has not shown that it took reasonable steps to ensure that its incarcerated juveniles receive an education in compliance with federal and state law.

Instead, the District's Statement of Undisputed Facts contains only three paragraphs that are even arguably relevant to attempts to provide a FAPE to plaintiffs and lists no facts suggesting that it has taken steps to ensure plaintiffs receive the three hours of daily instruction mandated by New York Law.  *See* Def. Syr. City School District's L.R. 7.1(a) Statement of Undisputed Material Facts, Dkt. No. 28-1, ¶¶ 16-18.  Each of these paragraphs concerns the provision of cell packets.[38]  To the extent that the District relies on the modification of cell packets to show that it has made good faith efforts, there is an issue of material fact based on the declaration of plaintiffs' expert, Dr. Kraus, who states that based on his review of the cell packets and the corresponding IEPs of the juveniles with disabilities who received the cell packets, it in no way appears that the cell packets have been  "modified" to the extent that the District staff alleges.[39]

---

[37] *See* Leg. Meeting Minutes, pg. 15 (Chief Esteban Gonzalez: 'If the [juvenile] inmate is violent and it is dangerous for the teacher to go and get assaulted, we will send them a packet that is authorized by the teacher.  They will do work in their cell.  Every day we ask them if they are going to go along with the program, going to behave, going to show that you have some reason to come out and not endanger everybody.  That is the process we have used for years for [the juvenile] population.')

[38] Should the District later claim that the packets satisfy their obligations under IDEA or New York law, we will demonstrate that they do not.  For the time being, there is no such claim. However, there is already ample evidence in the scant record available to plaintiffs which shows the gross inadequacies of the District's efforts related to the provision of cell packets to plaintiffs.  *See* Statement of Facts *supra* pg 4; *See also* Kraus Suppl. Decl. ¶¶ 20-23.

[39] Kraus Suppl. Decl. ¶¶ 11-13.

Because the record before this Court must be construed as establishing that the District has done nothing to remedy the undisputed violations of the plaintiffs' rights to educational services and procedural protections, the Court should deny the District's motion.

### C. Under Rule 56(d), The School District's Claim About "Causation" Is A Factual Assertion That Is Not Properly Resolved by Summary Judgment at this Stage of the Proceeding.

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000); *see also Trammell v. Keane*, 338 F.3d 155, 161 n. 2 (2d Cir. 2003). Where a party seeks summary judgment before the non-moving party has had a reasonable opportunity to conduct discovery, denial of the motion is generally appropriate. *See* Rule 56(d); *Anderson*, 477 U.S. at 250 n.5 (assuming in outlining summary judgment principles that a party will be granted adequate discovery before a motion for summary judgment is made).

Pursuant to Rule 56(d), if a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. Pro. 56(d). A party opposing summary judgment on 56(d) grounds must show "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir. 1999)

For purposes of this motion, the primary material fact on which plaintiffs will seek discovery is causation:  whether the Sheriff or the District or both caused the violation of plaintiffs' rights.  Certainly the District's claim that it did not cause the violations of plaintiffs' rights is the gravamen of its request for summary judgment dismissal and thus material. But causation is an exquisitely factual issue.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal citations omitted)  ("[I]t is for the jury to determine whether [a local governmental entity's] decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity."); *Jeffes v. Barnes*, 208 F.3d 49, 62-63 (2d Cir. 2000) (holding that both the existence of a municipal policy based on inaction and whether that policy caused constitutional injury are issues of material fact for a jury to decide).  Because (1) whether the District's inaction caused or contributed to the constitutional and statutory violations is an issue of material fact; (2) the plaintiffs have had almost no opportunity for discovery; and (3) as shown below, plaintiffs have made a more than adequate showing on each of the *Gurary* factors, summary judgment is not appropriate.

### i.  Facts Sought to Oppose the Motion and How They are to be Obtained[40]

The District asserts that the Sheriff's Office will not under any circumstances allow its employees to remove juveniles from the segregated housing unit for instruction or to visit the juveniles in the SHU for the same purpose. Def's Br. at 6. Plaintiffs are entitled to the opportunity to test the accuracy of these claims by deposing both District

---

[40] A more detailed discussion of the 56(d) factors is found in the accompanying declaration of plaintiff's counsel Joshua Cotter.

and Sheriff's Office staff.  Depositions will also allow plaintiffs to explore the efforts (if any) the District has taken to educate the juveniles in solitary confinement.  Further, discovery should help to resolve a significant contradiction in the District's own papers. The District claims that under the current MOU, the Sheriff must "coordinate daily transferring of youth to programming."  Def's Br. at 5; Dittmann Decl. Ex 1. Although that obligation was present in the previous version of the MOU, it is not reflected in the current MOU. *Id.* cf. Young Decl. Ex. 5.  With respect to plaintiffs' Due Process claim, which is premised on rights conferred by New York state law, plaintiffs would seek, through depositions of high-ranking District officials and document discovery, to find out how much they knew about the denial of any classroom instruction to juveniles in solitary, when they knew it, and whether they have taken any action to address the issue. Finally, the District has offered no information concerning children in in solitary confinement on the juvenile pod.  This alone should result in the denial of summary judgment at least as to the locked in their cells on the regular housing unit. If the court declines to deny summary judgment on that basis, however, plaintiffs will need to conduct discovery to ascertain whether the District's claims that the Sheriff's Office denies it access to juveniles in solitary confinement on the juvenile housing unit are accurate.  If the District in fact is denied access to juveniles in solitary on the juvenile housing unit, plaintiffs will require discovery as to what efforts, if any, the District has made to educate those juveniles.

### ii. Evidence Adduced in Discovery will Create Genuine Issues of Material Fact

With respect to both plaintiffs' IDEA claims and their Fourteenth Amendment claims, facts will be adduced during discovery concerning the District's knowledge of the Sheriff's refusal to grant access for educational purposes to juveniles in solitary confinement and the District's response to the Sheriff's policies and practices. This evidence will inform the question of whether the District did everything it reasonably could to furnish a FAPE and adequate instruction under New York law, or whether the District engaged in a policy or practice of inaction in the face of known constitutional and statutory violations.

### iii. Efforts by Plaintiffs to Obtain Discovery

Because a discovery schedule was established only on December 9, 2016 and this lawsuit was commenced on September 21, 2016, plaintiffs have had no opportunity to conduct discovery beyond the very limited discovery authorized for the preliminary injunction motion.  The District does not put forth any reason why this case is one of the "rarest of cases" where summary judgment may be granted prior to discovery.  Therefore, defendant's motion should be denied as premature.

## V. EXHAUSTION IS NOT REQUIRED BECAUSE PLAINTIFFS CHALLENGE A SYSTEMIC FAILURE TO PROVIDE EDUCATIONAL SERVICES AND PROCEDURAL PROTECTIONS

The District asserts that its motion for summary judgment should be granted because the plaintiffs did not exhaust administrative remedies under the IDEA.  Def's Br. at 10-13. However, exhaustion is excused in this case because the plaintiffs challenge systemic violations of their rights, and under well-established law such challenges satisfy the futility exception that obviates the need for exhaustion. *See J.S. ex rel N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004)(holding that where plaintiffs did not

challenge the content of their IEP's, but rather challenged the systemic failure of the district to prepare and implement the IEP's, exhaustion was not required); *see also Heldman v. Sobol*, 962 F.2d 148, 158-59 (2d Cir. 1992) ("The futility exception is particularly relevant in actions… that allege systemic violations of the procedural rights accorded by IDEA.")

As established above, plaintiffs challenge the systemic denial of FAPE to children with disabilities in solitary confinement. Plaintiffs also challenge the systemic failure of the District to perform manifestation hearings for all juveniles with disabilities at the Justice Center whose removal from regular classroom instruction for more than ten consecutive days or non-consecutive school days in the same school year based on a pattern of behavior is proposed.  Therefore, exhaustion under the IDEA is excused. *See Handberry v. Thompson*, 446 F.3d 335, 343 (2d Cir. 2006) (exhaustion excused because "plaintiffs challenge [defendants'] actions with respect to providing educational services to all entitled inmates at Rikers Island"), *J.S.*, 386 F.3d at 115 (exhaustion excused where the complaint related to the school district's systemic failures).

<u>**CONCLUSION**</u>

Because the District has not established (1) that it is excused from compliance with IDEA or the Due Process Clause of the Fourteenth Amendment based on the action or inaction of the Sheriff; (2) that there are no issues of fact relevant to the reasonability of the District's efforts to furnish a FAPE, manifestation hearings, and at least three hours of instruction per school day to children in solitary; (3) that further discovery is not warranted before a grant of summary judgment; or (4) that exhaustion is required in light

of the plaintiffs' allegations of a systemic denial of FAPE and manifestation hearings,

this Court should deny the District's motion

December 13, 2016
Syracuse, New York

Respectfully submitted,

 /s/ Joshua Cotter
Joshua T. Cotter
Susan M. Young
Samuel C. Young
LEGAL SERVICES OF
CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202
Tel: (315) 703-6500

Philip Desgranges
Mariko Hirose
Mariana Kovel
Aadhithi Padmanabhan
Christopher Dunn
NEW YORK CIVIL
LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300

Aimee Krause Stewart
SANFORD HEISLER, LLP
1666 Connecticut Avenue
NW, Suite 300
Washington, D.C. 20009

Attorneys for Plaintiffs