### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| V.W., a minor, by and through his parent and natural guardian DERECK WILLIAMS; R.C., a minor, by and through his parent and natural guardian SANDRA CHAMBERS; C.R., a minor, by and through his parent and natural guardian VERTELL PENDARVIS; M.R., a minor, by and through his parent and natural guardian KAREN RAYMOND; F.K., a minor, by and through his parent and natural guardian KASHINDE KABAGWIRA; and J.P., a minor, by and through his parent and natural guardian ALISSA QUINONES; on behalf of themselves and all others similarly situated, | Civil No. 1:16-cv-1150 (DNH) (DEP) |

Plaintiffs,

v.

EUGENE CONWAY, Onondaga County Sheriff, in his official capacity; ESTEBAN GONZALEZ, Chief Custody Deputy of the Onondaga County Justice Center, in his official capacity; KEVIN M. BRISSON, Assistant Chief Custody Deputy, in his official capacity; and SYRACUSE CITY SCHOOL DISTRICT,

Defendants.

## STATEMENT OF INTEREST OF THE UNITED STATES

## I.  Introduction

Last year, the Department of Justice ("the Department") ended the practice of allowing the use of solitary confinement for juveniles in the custody of the Federal Bureau of Prisons. U.S. Dept. of Justice, Report and Recommendations Concerning the Use of Restrictive Housing 114 (Mar. 2016), https://www.justice.gov/restrictivehousing ("DOJ Report"); Presidential

Memorandum – Limiting the Use of Restrictive Housing by the Federal Government (Mar. 1, 2016) ("Presidential Memorandum"), https://www.whitehouse.gov/the-press-office/2016/03/01/presidential-memorandum-limiting-use-restrictive-housing-federal.[1]  Plaintiffs' case involves precisely this practice for juveniles in the custody of a county law enforcement agency. Plaintiffs allege that 16- and 17-year-old juvenile offenders, including those with disabilities, are subjected to solitary confinement[2] in the Onondaga County Justice Center ("the Justice Center"). Pls.' Mot. for Prelim. Inj. at 1.  Plaintiffs assert that this confinement denies them meaningful human contact, educational programming, and mental health services, and that it violates federal law.  *Id.* at 1-2, 6-7.  The United States submits this Statement of Interest to draw the Court's attention to relevant case law and to contemporary research regarding juveniles and solitary confinement.[3]

## II.  Interest of the United States

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States" in any case pending in federal court.[4]  The United States, acting through the Department of Justice's Civil

---

[1] The Bureau of Prisons does not house any incarcerated juveniles in its own facilities, but instead contracts or enters into intergovernmental agreements with state or municipal juvenile facilities to house these individuals. DOJ Report at 61.  In these facilities, the Bureau's prohibition on restrictive housing for juveniles is enforced as a contract requirement.

[2] Plaintiffs use the umbrella term "solitary confinement" to refer to the Justice Center's use of disciplinary "lock-in," "punitive segregation," and "administrative segregation." Pls.' Mot. for Prelim. Inj. at 3-5.  The United States has used the term "restrictive housing" to refer to solitary confinement and other forms of segregation, DOJ Report at 3, but here will use the Plaintiffs' term.

[3] The United States takes no position on any other issues not specifically addressed in this Statement of Interest. Nor does it take a position on the facts as alleged by Plaintiffs. In addition, although this Statement addresses contemporary research regarding juveniles in solitary confinement, it takes no position on the applicability of that research in any other context.

[4] The full text of 28 U.S.C. § 517 states:  "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

Rights Division, has a broad interest in ensuring that conditions of confinement in state and local correctional facilities are consistent with the Constitution and federal law. Pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997a, the Attorney General is authorized to institute a civil action to address "egregious or flagrant conditions which deprive [prisoners or detainees] of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such persons to suffer grievous harm." 42 U.S.C. § 1997a(a). Similarly, the Attorney General is authorized by Section 14141 of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141"), to "obtain appropriate equitable and declaratory relief" to eliminate a pattern or practice of conduct by officials or employees of any governmental agency with responsibility for the incarceration of juveniles that deprives those juveniles of their constitutional or federal statutory rights.

The Civil Rights Division has previously exercised the United States' authority under CRIPA and Section 14141 to address issues related to the use of solitary confinement on juveniles in jails, including in the Jefferson County Jail in Alabama,[5] the Hinds County Jail in Mississippi,[6] the New York City Department of Correction Jails on Rikers Island,[7] and the

---

[5] U.S. Dep't of Justice Off. of Public Affairs, Department of Justice Announces Investigation of the Jefferson County Jail in Birmingham, Alabama (2015), https://www.justice.gov/opa/pr/department-justice-announces-investigation-jefferson-county-jail-birmingham-alabama (ongoing investigation of the Jail's use of solitary confinement on juveniles).

[6] Settlement Agreement Between the United States of America and Hinds County, Mississippi Regarding the Hinds County Jail, *United States. v. Hinds Cnty.*, No. 16-489 (S.D. Miss. July 19, 2016), ECF No. 8-1 at 37-38, https://www.justice.gov/crt/file/883861/download (investigation and subsequent consent decree in which the Jail agreed to eliminate solitary confinement as a disciplinary sanction for juveniles).

[7] Consent Judgment, *U.S. v. City of New York.*, No 11-5845 (S.D.N.Y. Oct. 21, 2015), ECF No.249 at 44 (investigation and subsequent consent decree in which the Jails agreed to ban punitive solitary confinement for juveniles).

Baltimore City Detention Center in Maryland.[8]  The Division also has addressed the use of

solitary confinement in juvenile detention facilities, including in the Scioto and Marion Juvenile

Correctional Facilities in Ohio[9] and the Leflore County Juvenile Detention Center in

Mississippi.[10]

## III.    Factual Allegations and Procedural Background

Plaintiffs allege that the Onondaga Sheriff's Office unconstitutionally imposes solitary

confinement on juveniles in its custody at the Justice Center.  Plaintiffs describe this practice as

involving at least 23 hours a day in an approximately 60 square foot cell with minimal

furnishings, virtually no contact with others except for adult inmates in neighboring cells who

routinely harass and intimidate them, recreation in a chain-linked indoor cage that is only slightly

larger than their cell and has no equipment, and no opportunity to attend educational

programming.  Pls.' Mot. for Prelim. Inj. at 1, 4-8.  In addition, Plaintiffs allege that Defendants

provide inadequate mental health care, neglecting to conduct mental health screenings before

placing juveniles into solitary confinement and, once juveniles are in solitary confinement,

limiting mental health services to a worker occasionally asking juveniles through their locked

doors whether they are suicidal.  *Id.* at 8-11.

Plaintiffs allege that between October 1, 2015 and August 31, 2016, at least 86 juveniles

were placed in solitary confinement.  For instance, according to plaintiffs, 17-year-old V.W. has

---

[8]  U.S. Dep't of Justice Special Lit. Section, *Letter from Assistant Attorney General Ralph F. Boyd, Jr. to Governor Parris N. Glendening* (2002), https://www.justice.gov/crt/i-background-1 (investigation and subsequent monitoring that found the Jail's use of solitary confinement on juveniles violated federal law).

[9]  Agreed Order, *United States v. Ohio*, No. 04-1206 (S.D. Ohio May 21, 2014), ECF No. 148 at 2, https://www.justice.gov/sites/default/files/crt/legacy/2014/06/30/ohiojuv_order_5-21-14.pdf (investigation and subsequent consent decree in which the facilities agreed to eliminate disciplinary solitary confinement for juveniles).

[10]  Settlement Agreement between the United States and Leflore County, Mississippi, *United States v. Leflore Cnty.*, No. 15-00059 (N.D. Miss. May 13, 2015), ECF No. 3-1 at 10-12, https://www.justice.gov/sites/default/files/crt/legacy/2015/05/14/leflore_agreement_5-13-15.pdf (investigation and subsequent consent decree in which the facility agreed to eliminate disciplinary solitary confinement for juveniles).

received at least 9 different disciplinary isolation sanctions and has been isolated for over 115 days, 17-year-old R.C. has been isolated for a total of over 30 days, and 17-year-old plaintiff M.R. has received at least 8 different disciplinary isolation sanctions and has been isolated for over 80 days in total.  Cumulatively, Defendants have allegedly placed named plaintiffs in solitary confinement for a total of nearly seven and a half years.  Pls.' Mot. for Class Cert. at 4.[11]  Plaintiffs allege that as a result of solitary confinement, they regularly experience harm in the form of anxiety, hopelessness, irritability, stress, sadness, restlessness, post-traumatic symptoms, agitation, and suicidal ideations.  Pls.' Mot. for Prelim. Inj. at 9-10.

Plaintiffs filed their Complaint on December 21, 2015.  On September 23, 2016, Plaintiffs filed a Motion for Class Certification.  Defendants filed an Answer on November 11, 2016.  Plaintiffs filed a motion for Preliminary Injunction on December 21, 2016.

## IV.  Argument

Juveniles are psychologically more vulnerable than adults.  Their brains are still developing,[12] "making their time spent in solitary confinement even more difficult and the developmental, psychological, and physical damage more comprehensive and lasting."  Nat'l Comm'n on Correctional Health Care, *Position Statement on Solitary Confinement* 2 (Apr. 2016).  In 2012, the United States Attorney General's National Task Force on Children Exposed to Violence similarly concluded that "[n]owhere is the damaging impact of incarceration on vulnerable children more obvious than when it involves solitary confinement," including

---

[11] Typically, about 30 juveniles are held at the facility at any given time, according to Plaintiffs.  Pls.' Complaint at 7.

[12] The prefrontal cortex of the brain – the area associated with response inhibition, emotional regulation, planning, and organization – continues to develop well into a person's 20s.  *See* DOJ Report at 59; *see also* B.J. Casey et al., *Structural and Functional Brain Development and its Relation to Cognitive Development*, 54 BIOLOGICAL PSYCHO. 241, 243 (2000); Jay N. Giedd et al., *Brain Development During Childhood and Adolescence: A Longitudinal MRI Study*, 2 NATURE NEUROSCIENCE 861 (1999).

increased vulnerability to suicide.[13]  Robert L. Listenbee, Jr., *Report of the Attorney General's National Task Force on Children Exposed to Violence*, 178 (Dec. 12, 2012).

To that end, prominent medical and correctional groups have called for a ban on solitary confinement for juveniles.  *See, e.g.*, Am. Acad. of Child & Adolescent Psychiatry, *Policy Statement:  Solitary Confinement of Juvenile Offenders* (Apr. 2012), http://www.aacap.org/aacap/policy_statements/2012/solitary_confinement_of_juvenile_offenders.aspx; Am. Psychological Ass'n, *Solitary Confinement of Juvenile Offenders* (2015), https://www.apa.org/about/gr/issues/cyf/solitary.pdf; Am. Pub. Health Ass'n, *Solitary Confinement as a Public Health Issue* (Nov. 5, 2013), https://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2014/07/14/13/30/solitary-confinement-as-a-public-health-issue; Nat'l Comm'n on Correctional Health Care, *Position Statement on Solitary Confinement* (Apr. 2016), http://www.ncchc.org/solitary-confinement; *c.f.* Am. Med. Ass'n, *Policy Statement:  Solitary Confinement of Juveniles in Legal Custody* (Nov. 2014) (opposing solitary confinement of juveniles for disciplinary purposes).  Further, the American Correctional Association recognizes that "isolating a youth for extended periods can have serious psychological and developmental consequences." Am. Correctional Ass'n, *Letter from President Mary L. Livers and Executive Director James A. Gondles, Jr. to Staff Attorney at the Center for Children's Law and Policy Jennifer Lutz* (Mar. 24, 2016), http://www.stopsolitaryforkids.org/wp-content/uploads/2016/04/ ACA-Support-Letter.pdf.

The Justice Department's Bureau of Prisons ("BOP") echoed this consensus by ending the practice of solitary confinement for juveniles in BOP custody.  DOJ Report at 114;

---

[13]  A Department of Justice nationwide study found that half of the suicides occurring in juvenile detention facilities occurred when the juvenile was held in solitary confinement, and more than sixty percent of young people who committed suicide while in confinement had a history of being held in isolation.  *See* Lindsay M. Hayes, Dep't of Justice Office of Juvenile Justice and Delinquency Prevention, Juvenile Suicide in Confinement: A National Survey, viii (2009), https://www.ncjrs.gov/pdffiles1/ojjdp/213691.pdf.

Presidential Memorandum.  The Department also issued a set of "Guiding Principles" intended as best practices for correctional facilities, including those at the state and local level.  *See* DOJ Report at 93-103 (Guiding Principles), https://www.justice.gov/dag/file/815556/download. Under Guiding Principle #41, "Juveniles should not be placed in restrictive housing."  DOJ Report at 101 (Guiding Principles at 8).  Under Guiding Principle #42, in "very rare situations" juveniles may be separated from others, and then only "as a temporary response to behavior that poses a serious and immediate risk of physical harm."  *Id.*  Such placement "should be brief, designated as a 'cool down' period, and done only in consultation with a mental health professional."  *Id.*

The Supreme Court has also emphasized the particular developmental vulnerability of juveniles.  It has recognized that juveniles "have a lack of maturity and an underdeveloped sense of responsibility," they are "more vulnerable or susceptible to negative influences and outside pressures," and their characters are not as "well formed." *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012); *Graham v. Florida,* 560 U.S. 48, 68 (2010); *Roper v. Simmons*, 543 U.S. 551, 569 (2005).  Youth "is more than a chronological fact . . . it is a moment and condition of life when a person may be most susceptible to influence and to psychological damage." *Miller*, 132 S. Ct. at 2467 (internal quotations and citations omitted).

Plaintiffs' claims under the Eighth and Fourteenth Amendments require an inquiry into whether the prisoner faces a "substantial risk of serious harm" and whether Defendants were deliberately indifferent to that risk.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Thus, when analyzing these claims, the Court should consider evidence that isolating juveniles can cause serious harm.  In *H.C. v. Jarrard*, 786 F.2d 1080 (11th Cir. 1986), for example, a sixteen-year-old detainee was "isolated for seven days . . . and deprived of virtually every physical or

emotional stimulus," from which "[r]eal injury can be inferred."  *Id.* at 1088 (internal quotation

marks omitted).  And, in further noting that "the conditions and length of adult confinement" can

give rise to an inference of emotional damages, the *Jarrard* court emphasized that "[j]uveniles

are even more susceptible to mental anguish than adult convicts."  *Id.*

Here, in addition to alleging harsh conditions of isolation, Plaintiffs proffer specific

evidence that juveniles held at the Justice Center regularly experience "suicidal ideations, major

depression, a disconnect from reality, post-traumatic symptoms, agitation, and worsening

symptoms of Attention Deficit Hyperactivity Disorder ("ADHD") and Disruptive Mood

Dysregulation Disorder ("DMDD").  Pls.' Mot. for Prelim. Inj. at 9 (citing declarations of the six

named Plaintiffs and Dr. Louis Kraus, Plaintiffs' expert who evaluated juveniles at the Justice

Center).  Courts have relied upon this kind of expert and scientific evidence, as well as the nature

of the conditions at issue, to find that solitary confinement of juveniles violates their

constitutional rights.  *See, e.g.*, *Morales v. Turman*, 364 F. Supp. 166, 172 (E.D. Tex. 1973);

*Lollis v. N.Y. State Dep't of Soc. Servs.*, 332 F. Supp. 473, 480 (S.D.N.Y. 1970).  In *Morales*,

where  juveniles were locked into single rooms or cells for a month or more, with little

opportunity to leave and no contact with staff, the court cited expert opinion that "prolonged

[solitary] confinement of a child to a single building can be harmful unless the child is receiving

a great deal of attention during the time of confinement." *Morales v. Turman*, 364 F. Supp. at

172.  The court also noted that "[e]xperiments in sensory deprivation have shown that the

absence of many and varied stimuli may have a serious detrimental effect upon the mental health

of a child." *Id.*  Likewise, in *Lollis*, the court relied on the affidavits of seven psychiatrists,

psychologists, and educators of delinquent juveniles, "a group made up of men and women of

high standing and expertise," who "[were] unanimous in their condemnation of extended

isolation as imposed on children, finding it not only cruel and inhuman, but counterproductive to the development of the child." 332 F. Supp. at 480.  This Court should consider the same factors, as well as the growing body of scientific research and relevant Supreme Court case law, in assessing the harm caused to juveniles by the alleged solitary confinement practices at the Justice Center.

## V.  Conclusion

For the foregoing reasons, the United States files this Statement of Interest regarding Plaintiffs' Motion for Preliminary Injunction.


January 3, 2017                                           Respectfully submitted,


RICHARD S. HARTUNIAN                        VANITA GUPTA
United States Attorney                            Principal Deputy Assistant Attorney General
                                                         Civil Rights Division
*/s/ John Hoggan*
JOHN D. HOGGAN, JR.                            STEVEN H. ROSENBAUM
Assistant United States Attorney                 Chief
                                                         Special Litigation Section

                                                         SHELLEY R. JACKSON
                                                         Deputy Chief

                                                         LAURA L. COON
                                                         Special Counsel

                                                         */s/ Kyle Smiddie*
                                                         KYLE E. SMIDDIE
                                                         ATTICUS LEE
                                                         Trial Attorneys
                                                         Special Litigation Section
                                                         Civil Rights Division
                                                         950 Pennsylvania Avenue, NW
                                                         Washington, D.C.  20530
                                                         Telephone: (202) 307-6581
                                                         Email: kyle.smiddie@usdoj.gov
                                                         Attorneys for the United States