UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
V.W., a minor, by and through his parent :
and natural guardian DERECK WILLIAMS, :
et al., on behalf of themselves and all others :
similarly situated, :
                Plaintiffs, :      16-CV-1150 (DNH) (DEP)
                v. :
:
EUGENE CONWAY, Onondaga County Sheriff, :
in his official capacity, et al. :
:
                Defendants. :
---------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

Philip Desgranges
Mariko Hirose
Mariana Kovel
Aadhithi Padmanabhan
Kevin Jason*
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004

Joshua T. Cotter
Susan M. Young
Samuel C. Young
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202

Aimee Krause Stewart
SANFORD HEISLER, LLP
1666 Connecticut Avenue NW, Suite 300
Washington, D.C. 20009

Dated: January 30, 2017        Counsel for Plaintiffs
      New York, N.Y.              *Not yet admitted in N.D.N.Y.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT....................................................................................................................1

    I.    THE SHERIFF'S OFFICE'S OPPOSITION TO PLAINTIFFS' EIGHTH AMENDMENT CLAIM IS BASED ON FACTUAL ASSERTIONS THAT ARE MISGUIDED, IMMATERIAL, AND UNSUPPORTED BY EVIDENCE ..........................................................1

    II.   DEFENDANTS' ATTEMPTS TO AVOID LIABILITY FOR DENYING PLAINTIFFS APPROPRIATE EDUCATION AND RELATED PROCEDURAL PROTECTIONS ARE BASELESS ......................................................................................7

CONCLUSION..................................................................................................................9

# TABLE OF AUTHORITIES

**CASES**

*Farmer v. Brennan*, 511 U.S. 825 (1994) ................................................................................2

*Handberry v. Thompson*, 446 F.3d 335 (2d Cir. 2006) ............................................................8

*Handberry v. Thompson*, 92 F. Supp. 2d 244 (S.D.N.Y. 2000) ................................................8

*Helling v. McKinney*, 509 U.S. 25 (1993) ............................................................................4, 5

*Jones v. Bock*, 549 U.S. 199 (2007) .........................................................................................9

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ......................................................................................9

**STATUTES AND REGULATIONS**

20 U.S.C. § 1401(9) ...................................................................................................................8

20 U.S.C. § 1412(a)(12) .............................................................................................................8

20 U.S.C. § 1414(d) ...................................................................................................................8

N.Y. Comp. Codes R. & Regs. Tit. 9 § 7070.3 ..........................................................................8

## PRELIMINARY STATEMENT

In opposing the plaintiffs' motion for a preliminary injunction to halt the abusive use of solitary confinement for juveniles at the Onondaga County Justice Center, the Sheriff's Office defendants ignore plaintiffs' experts' opinions that isolating juveniles exposes them to serious harm and does not make jails safer, fail to acknowledge a series of Supreme Court cases recognizing that juveniles are entitled to greater protections under the Eighth Amendment, and completely disregard numerous district court cases holding that even short periods of isolation are unconstitutional for juveniles. Rather, relying upon a single affidavit from a defendant, the Sheriff's Office tries to suggest that juveniles at the facility are not really isolated, that the plaintiffs have not been harmed, that the Sheriff's Office has not been deliberately indifferent to the health of the juveniles, and that the abusive solitary practices at the Justice Center are necessary to maintain order. But the plaintiffs have introduced substantial evidence and expert opinion on each of these points, and the Sheriff's Office's assertions to the contrary are misleading, immaterial, or unsupported by any evidence.

In addition, instead of responding to the evidence that juveniles in solitary confinement are being denied appropriate education and procedural protections, defendants attempt to shift blame from themselves and press an argument foreclosed by Second Circuit precedent. The defendants' arguments fail to detract from the overwhelming evidence establishing plaintiffs' substantial likelihood of success on their education claims.

## ARGUMENT

**I. THE SHERIFF'S OFFICE'S OPPOSITION TO PLAINTIFFS' EIGHTH AMENDMENT CLAIM IS BASED ON FACTUAL ASSERTIONS THAT ARE MISGUIDED, IMMATERIAL, AND UNSUPPORTED BY EVIDENCE.**

At the outset, the Sheriff's Office does not dispute the basic legal framework that governs the Eighth Amendment analysis: whether defendants inflicted a deprivation that is objectively

sufficiently serious and were deliberately indifferent to plaintiffs' health or safety.[1] *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Sheriff's Office also does not dispute many of the key material facts that establish plaintiffs' substantial likelihood of success to satisfy the Eight Amendment standard. It does not dispute, for example, that juveniles, because of their developmental differences, face a greater risk of serious harm in isolation than adults or that juveniles with mental illnesses are especially susceptible to serious harm from isolation. *See* Cty. Defs.' Opp'n. Mem. at 2-6, ECF. No. 63. It does not dispute that it has a policy and practice of locking juveniles—including those with mental illnesses, histories of self harm, and histories of suicidal intent—in their cells ("lock-in) or in the cells in the Segregation Housing Unit ("SHU" or "Box") for 23 hours a day or more for weeks or months at a time as punishment for *any* rule violation. *See id.* It does not dispute that juveniles are prohibited from speaking to their peers or that juveniles in SHU are kept in barren, dimly lit cells that reek of human waste; take recreation in barren chain-linked cages; are sexually threatened by adults who masturbate or flash their penises in front of them; and are attacked by adults who douse them in urine and feces. *See id.* And it does not dispute that it was warned on numerous occasions that its use of solitary confinement for juveniles posed a significant risk of serious harm to their health and safety. *See id.*

Rather, what the Sheriff's Office attempts to dispute is the extent of isolation imposed at the facility, the harm facing the plaintiffs, the defendants' deliberate indifference, and the necessity for isolation as imposed by the defendants. *See* Cty. Defs.' Opp'n. Mem. at 3-6. This

---

[1] The Sheriff's Office, however, ignores every district court case finding short periods of isolation for juveniles to be unconstitutional and every Supreme Court case finding that juveniles are entitled to greater protections under the Eighth Amendment. *See* Cty. Defs.' Opp'n. Mem. at 3-4.

attempt, which is based on a single, self-serving and often conclusory affidavit from defendant Esteban Gonzalez, fails on each count.

First, starting with the extent of isolation, the Sheriff's Office contends that, notwithstanding being confined alone to their cells 23 hours a day or more for days, weeks or months on end, the conditions at the Justice Center are not "strict segregation" because plaintiffs "maintain access to medical and mental health services, law library, visitation, telephones, recreation for one hour per day, showers, education and religious services." Cty. Defs.' Opp'n. Mem. at 4. This contention is misleading and unsupported. Plaintiffs' expert, Dr. Louis Kraus, a child and adolescent psychiatrist, has opined that none of these services offer juveniles meaningful social interaction that mitigates the 23 hours or more juveniles spend locked in a cell in isolation.[2] *See* Kraus Second Suppl. Decl. ¶ 8. That the Sheriff's Office offers medical services when a juvenile becomes ill, access to law books,[3] or showers, as they have an independent constitutional obligation to provide, is immaterial because it is not meaningful social interaction. *See id*. As for education services, the Sheriff's Office is referring to cell packets that are left with juveniles,[4] which provides no meaningful interaction with others. *See id*. As for recreation services, recreation is minimal at just one hour a day and, for those in the SHU, takes place in a barren, indoor cage[5] where juveniles are sometimes harassed and attacked

---

[2] Notably, the Sheriff's Office does not attempt to demonstrate how isolation is supposedly mitigated by these services.

[3] The "law library," according to jail policies, is just a book cart or kiosk. *See* Inmate Handbook at 22, ECF No. 46-8. Tellingly, the Sheriff's Office makes no attempt to claim that juveniles have meaningful social interaction with others in the so-called law library.

[4] It is undisputed that juveniles in isolation do not receive instruction from a teacher. *See* Cty. Defs.' Opp'n. Mem. at 6-8; Sch. Dist.'s Answer ¶ 1, ECF No. 16.

[5] The "outdoor recreation" that defendant Gonzalez claims is available refers to these indoor cages, pictures of which are available in plaintiffs' filings. *See* Krisberg Decl., Ex. I, ECF No. 46-21.

by adults in neighboring cages. *See* Pls.' Mem. at 7-8, 17 (explaining that these attacks and harassment contribute to the risk of serious harm).

As for visitation, visits by family and friends are limited to two one-hour visits per week, *see* Inmate Handbook at 19-20, and plaintiffs have put forth uncontested evidence that jail staff have prohibited these visits on several occasions, *see* Quiñones Decl. ¶¶ 6-10, ECF No. 46-7; Lomack Decl. ¶¶ 7-11, ECF No. 46-7. As for telephones, jail policies limit phone use to recreation time for those in the juvenile pod and prohibit personal phone calls for those in SHU.[6] *See* Inmate Handbook 19, 26. As for religious services, they appear to be at most an hour long, and even then, three of the six named plaintiffs, according to the jail's logs, have never been to religious services, while the others had rarely been. *See* Rafael Suppl. Decl. ¶¶ 5-7 (explaining that V.W. attended one religious service out of 149 days in solitary confinement, that C.I. attended two services out of 58 days in solitary, and that F.K. attended two services out of 28 days in solitary). Finally, as for mental health services, plaintiffs have put forth ample evidence that mental health workers conduct cursory visits for only a couple minutes each week, *see* Pls.' Mem. at 5-6 & nn.25-26, something Dr. Louis Kraus has said is not meaningful. *See* Kraus Decl. ¶¶ 28, 45-46, ECF No. 46-14; Kraus Suppl. Decl. ¶¶ 15, 21, ECF No. 46-13.

Second, the Sheriff's Office, in one paragraph of its opposition brief, seeks to contest plaintiffs' extensive factual and expert records showing that they face a substantial risk of serious harm. *See* Cty. Defs.' Opp'n. Mem. at 4-5. Though the Sheriff's Office argues that plaintiffs lack evidence of actual harm to support their claim, *see id.* at 3-4, the Supreme Court held that demonstrating a substantial *risk* of serious harm is sufficient, *Helling v. McKinney*, 509 U.S. 25,

---

[6] After a juvenile's first day in SHU, when they are permitted one personal phone call, no further personal calls are permitted no matter how long the juvenile is confined to isolation. *See* Inmate Handbook 19, 26.

33 (1993) (finding that "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them"). Plaintiffs have shown, through the testimony of Dr. Kraus, that they are exposed to a substantial risk of serious harm, including a high likelihood of permanent changes to adolescent brain development. *See* Kraus Decl. ¶¶ 29-48. Notably, the Sheriff's Office does not offer any psychiatrist testimony to rebut this opinion. That is unsurprising because, as Dr. Kraus stated, "no ethical mental health professional could disagree that all juveniles punished with isolation in the Justice Center face a substantial risk of serious harm." Kraus Suppl. Decl. ¶ 10.

Moreover, contrary to the Sheriff's Office's argument, plaintiffs have provided substantial evidence that they suffered serious harms because of their time in solitary confinement. The Sheriff's Office's sole response to this overwhelming evidence, including evidence of worsening mental illnesses and other serious harms, is to quibble with whether three of eight juveniles who had expressed suicidal intent to jail staff were *truly* suicidal because of their experience in solitary confinement. *See* Cty. Defs.' Opp'n. Mem. at 4-5. This hardly undermines Dr. Kraus's opinion that juveniles at the Justice Center are developing suicidal ideation and intent as a result of solitary confinement. *See* Kraus Decl. ¶ 40. In any event, even as to those three, Dr. Kraus finds it "disturbing" that their suicidal intent is being minimized and has opined that staff are not providing adequate mental health services to treat the juveniles. *See* Kraus Second Suppl. Decl. ¶ 12. Without appropriate treatment to help a juvenile progress back to general population, the only apparent way for juveniles to get out of the strip cell used for suicide watch is to recant their initial suicidal thoughts. *See id.*

Third, turning to the issue of deliberate indifference, the Sheriff's Office completely disregards plaintiffs' evidence that it was repeatedly warned about the serious harm flowing from

5

their solitary practices.[7]  *See* Pls.' Mem. at 19-20.  Rather, they assert vaguely that "all inmates" are seen by medical staff and that "inmates continue to have access to medical and mental health services throughout the confinement."  Cty. Defs.' Opp'n. Mem. at 6.  But Dr. Kraus has already opined that the minimal mental health supervision and services for juveniles are woefully inadequate to address the risk of serious harm.  Kraus Suppl. Decl. ¶¶ 17-21.  Yet the Sheriff's Office continues to ignore the risk of harm by placing juveniles in solitary confinement.

Finally, though its brief does not address the issue, defendant Gonzalez argues in his affidavit that the facility's use of solitary confinement is necessary to maintain security and order.[8]  Esteban Gonzalez Aff. ("Gonzalez Aff.") ¶¶ 24-38, 56-57.  But that assertion is unsupported by evidence.  Gonzalez asserts that disciplinary isolation of the type imposed at the Justice Center is "universally used" by correctional facilities for juveniles, *see* Gonzalez Aff. ¶ 56, but this is simply not true—Rikers Island, Los Angeles County, the New York State prison system, the North Carolina prison system,[9] the Federal Bureau of Prisons, and many juvenile detention facilities around the country have banned the use of solitary confinement for juveniles.[10]  *See* Pls.' Mem. at 17-18.  Indeed, there is a professional consensus among psychiatrists and correctional professionals that it is counterproductive to the safety of the

---

[7] This includes warnings that juveniles in SHU were exposed to the threats and attacks of adults, which contributed to their substantial risk of serious harm. *See, e.g.*, R.C. Suppl. Decl. ¶¶ 3-4, ECF No. 46-3.  In its deliberate indifference arguments, the Sheriff's Office completely disregards this evidence. *See* Cty. Defs.' Opp'n. Mem. at 6.

[8] Indeed, defendant Gonzalez confirmed that defendants believe that placing juveniles in lock-in or the Box was appropriate for a range of low-level misbehavior including: refusing to clean one's cell, spraying water on a deputy, yelling, kicking a cell door, arguing with another juvenile, and not going to class. *See* Gonzalez Aff. ¶¶ 26, 29-30, 32-33, 35-36, 38.

[9] Because New York and North Carolina remain the only two states to automatically prosecute youth as adults once they turn 16, it's particularly notable that the prison systems in those two states have banned solitary for their 16- and 17-year-old population.

[10] Gonzalez also asserts that the Sheriff's Office's policy allows for other forms of sanctions for misbehavior, but he did not dispute plaintiffs' evidence that these sanctions are not imposed independently of solitary confinement. *See* Rafael Decl. ¶ 5, ECF No. 46-31.

facility to place juveniles in disciplinary isolation. *See* Krisberg Decl. ¶ 24-27, ECF No. 46-17; Parker Decl. ¶ 47, ECF No. 46-23; Kraus Decl. ¶ 55-56. The Department of Youth Services in Ohio, for example, which eliminated disciplinary isolation, reported that its reforms led to a 22% decrease in rate of violent acts in its facilities. Krisberg Decl. ¶ 41; Ohio Dep't of Youth Services, *Extraordinary Reform in Ohio's Juvenile Justice System,* Krisberg Decl. Ex. D, ECF No. 46-18. Moreover, plaintiffs' corrections experts have never opined that jail staff should not have the ability to temporarily lock a juvenile in their cell. In fact, they all agree that for serious incidents threatening the safety of inmates or staff, a brief separation (of only a few hours) from the inmate population is appropriate. *See* Krisberg Decl. ¶¶ 31, 45; Parker Decl. ¶ 49.

## II. DEFENDANTS' ATTEMPTS TO AVOID LIABILITY FOR DENYING PLAINTIFFS APPROPRIATE EDUCATION AND RELATED PROCEDURAL PROTECTIONS ARE BASELESS.

Neither the Sheriff's Office nor the Syracuse City School District dispute the material facts in plaintiffs' initial papers. Neither defendant disputes that juveniles in disciplinary isolation are deprived of educational instruction or that those who have been denied instruction are denied notice or an opportunity to be heard. *See* Cty. Defs.' Opp'n. Mem. at 6-8; Sch. Dist.'s Answer ¶ 1, ECF No. 16; Sch. Dist.'s Opp'n. Mem. at 1.[11] Neither defendant disputes that juveniles with special education needs are denied special education services or procedural

---

[11] Although the Sheriff's Office claims that it provides education to juveniles in solitary confinement, *see* Cty. Defs.' Opp'n. Mem. at 7-8, they do not dispute that education is limited to cell packets and that there is no educational instruction provided, *see id.* Moreover, although the School District contends that it would immediately provide plaintiffs with their entitled educational instruction if the Sheriff's Office permitted it, *see* Sch. Dist.'s Opp'n. Mem. at 1, that is an empty promise because the records show no inmate, regardless of disciplinary status, receives the required amount of mandated educational instruction, *see* J.S. Decl. ¶ 4, ECF No. 46-6; C.B. Decl. ¶ 7, ECF No. 46-6; V.W. Decl. ¶ 7, ECF No. 46-2; J.C.P Decl. ¶ 8, ECF No. 46-7; *see also, e.g.,* "Inmate Activity History" of M.R., C.I. and V.W., Young Decl. Ex. 6, ECF No. 42-3 (indicating that M.R., C.I. or V.W. did not receive the mandated 15 hours of educational instruction in any week during their stay at the Justice Center ).

7

protections when they are in disciplinary isolation. *See* Cty. Defs.' Opp'n. Mem. at 6-8; Sch. Dist.'s Opp'n. Mem. at 1.

Turning to both defendants' legal arguments, their attempts to escape liability here are baseless. Defendants first attempt to avoid liability by pointing fingers at each other. *See* Cty. Defs.' Opp'n. Mem. at 8; Sch. Dist.'s Opp'n. Mem. at 1. But defendants' blame-shifting fails because they jointly share the obligation to ensure plaintiffs receive appropriate educational instruction, including special educational services. *See* 20 U.S.C. §§ 1401(9), 1412(a)(12), 1414(d); *see also* N.Y. Comp. Code R. & Regs. tit. 9, § 7070.3 (placing obligation on chief administrative officer of each local correctional facility to coordinate with the local educational agency to provide appropriate educational services).

Next, the Sheriff's Office misconstrues precedent in arguing that plaintiffs' due process claim fails because juveniles have no property interest in education. *See* Cty. Defs.' Opp'n. Mem. at 6-7. As plaintiffs establish in their initial papers, incarcerated youth have a property interest in 15 hours of educational instruction per week. *See Handberry v. Thompson*, 92 F. Supp. 2d 244, 248 (S.D.N.Y. 2000) (finding constitutionally protected property interest in education for incarcerated youth under New York's Education Law). And the Second Circuit found this property interest is protected by due process. *Handberry v. Thompson*, 446 F.3d 335, 356 (2d Cir. 2006) ("We also affirm the judgment insofar as it [orders a minimum of 15 hours of instruction per week] *on the basis of the due process clause of the Fourteenth Amendment*." (emphasis added)). The Sheriff's Office appears to misunderstand this binding precedent in arguing against plaintiffs' due process claim.[12]

---

[12] Moreover, though the Sheriff's Office asserts in one sentence of its brief that the Prison Litigation Reform Act ("PLRA") bars plaintiffs' education claims, this cursory argument merits no consideration. Because the PLRA is an affirmative defense, *see Jones v. Bock*, 549 U.S. 199,

## CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

---

211-12 (2007), defendants bear the ultimate burden of proof to show that plaintiffs failed to exhaust *available* administrative remedies on their education claims. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (defining "available" remedies as "accessible or may be obtained" and "capable of use for the accomplishment of a purpose"). In their complaint, plaintiffs plead that administrative remedies were not available, "with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id.* at 1853. *See* Compl. ¶¶ 56, 77, 87-88, 97-98, 107-08, 116, 124, ECF No. 1 (detailing corrections staff consistent refusals to provide grievance forms or entertain grievances and, in some cases, throwing grievances in the trash). The Sheriff's Office's one-sentence argument makes no attempt to rebut this, and thus it has not satisfied its burden.

Dated: January 30, 2017
New York, New York

Respectfully submitted,

_____
Philip Desgranges
Mariko Hirose
Mariana Kovel
Aadhithi Padmanabhan
Kevin Jason*
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
　FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300

Joshua T. Cotter
Susan M. Young
Samuel C. Young
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202
Tel: (315) 703-6500

Aimee Krause Stewart
SANFORD HEISLER, LLP
1666 Connecticut Avenue NW, Suite 300
Washington, D.C. 20009
Of Counsel

*Attorneys for Plaintiffs*

*Not yet admitted to N.D.N.Y.