UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
V.W., a minor, by and through his parent and : 
natural guardian DERECK WILLIAMS, et :
al., on behalf of themselves and all others : 16-CV-1150 (DNH) (DEP)
similarly situated, :
 :
                 Plaintiffs, :
 :
        v. :
 :
EUGENE CONWAY, Onondaga County Sheriff, :
in his official capacity, et al. :
 :
                 Defendants. :
---------------------------------------------------------------- X

## SECOND SUPPLEMENTAL DECLARATION OF LOUIS J. KRAUS, MD, IN SUPPORT OF PLAINTIFFS' REPLY TO THE MOTION FOR A PRELIMINARY INJUNCTION

I, Louis J. Kraus, pursuant to 28 U.S.C. § 1746, declare as follows:

    1.      This declaration is submitted in support of the Plaintiffs' reply to the Motion for a Preliminary Injunction. If called upon to testify, I could and would do so competently as follows.

    2.      I submitted my initial declaration in this case, dated September 19, 2016, and my supplemental declaration, dated December 14, 2016, in support of Plaintiffs' Motion for Preliminary Injunction.[1] I supplement those declarations with this declaration ("Second Supplemental Declaration") as described below.

    3.      My qualifications are set forth in my September 19 Declaration, which is attached as exhibit 1 to the December 14, 2016 declaration. *See* September 19 Decl. ¶¶ 2-10. My Curriculum Vitae is attached thereto as Exhibit A.

---

[1] My September 19 Declaration was initially submitted in support of Plaintiffs' Motion for Class Certification, and it was later resubmitted as an exhibit to my Supplemental Declaration in support of Plaintiff's Motion for Preliminary Injunction.

4. In addition to my involvement in this case that I outlined in paragraphs 11-17 of my September 19 Declaration and paragraphs 4-5 of my Supplemental Declaration, for the purpose of preparing this Second Supplemental Declaration, I reviewed the defendants' memoranda of law in opposition to plaintiffs' motion for preliminary injunction, all behavioral health records filed by the Sheriff's Office in support of their opposition,[2] and the affidavit of defendant Esteban Gonzalez.

5. In forming my opinions below, I relied on my review of the documents, observations of the facility, and evaluations of several juveniles. I also relied on my academic and clinical experience and the extensive body of literature regarding the psychiatric effects of solitary confinement, cognitive and behavioral development in adolescents, and juveniles in correctional settings, including those listed in Exhibit C to my September 19 Declaration.

6. My involvement and compensation is detailed in paragraphs 16 and 17 of my September 19 Declaration and remain unchanged.

## OPINIONS AND BASES OF OPINIONS

**I. THE SHERIFF'S OFFICE'S OPPOSITION FILINGS HAVE NOT CHANGED MY OPINION THAT ITS USE OF DISCIPLINARY ISOLATION EXPOSES JUVENILES TO A SUBSTANTIAL RISK OF SERIOUS HARM.**

7. None of the opinions offered in either my September 19 Declaration or my Supplemental Declaration have changed after my review of the Sheriff's Office's filings referenced above. It remains my opinion that the Sheriff's Office's policy and practice of using disciplinary isolation is seriously harmful to juveniles as a group.

---

[2] As noted in my Supplemental Declaration, I reviewed eleven behavioral health records pertaining to the six named plaintiffs and for M.S., C.B., R.P., D.D., and T.S. Based on my conversations with plaintiffs' counsel, I understood there to be records missing among the eleven sets that I reviewed, and my understanding is that all missing records were included in the Sheriff's Office's filing. Because the Sheriff's Office also filed two sets of behavioral health records for C.C. and A.C. that I had not previously reviewed, I reviewed those records as well.

8.     I understand from speaking to juveniles, reading the Sheriff's Office's own policies, and from reading its opposition filings, that the Sheriff's Office provides juveniles in isolation access to the following services: medical services when a juvenile becomes ill, mental health services, law books, visitation, telephones, showers, cell packets, religious services, and recreation for one hour per day.  In my opinion, none of these services mitigates the substantial risk of serious harm juveniles are exposed to by being locked in a cell for 23 hours or more per day in isolation.  In particular, medical services when a juvenile becomes ill, access to law books, showers, and cell packets do not provide meaningful social interaction.  And the mental health, religious, visitation, and telephone services provided at the Justice Center provide only minimal interaction with others.

9.     In his affidavit, defendant Gonzalez's admission that therapeutic services are not provided at the Justice Center confirms my opinion that the Sheriff's Office and its staff are failing to address the serious harm or substantial risk of serious harm that is correlated with the use of disciplinary isolation for juveniles, especially those juveniles with mental health concerns. To address the harms from isolation, jail staff should be providing juveniles reasonable therapeutic services, like short-term cognitive behavioral therapy and group therapy.  Research shows that the greatest risk factors for suicide in correctional facilities are agitation, depression, and hopelessness.  Juveniles who are experiencing these conditions and are not provided reasonable therapeutic services are, in my opinion, placed at an even greater risk of suicide.

10.    While defendant Gonzalez offers statements about when mental health treatment would be appropriate for plaintiffs, he lacks medical training and expertise to make these statements.  In my opinion, the Sheriff's Office and its staff use overly narrow criteria (such as overt paranoia, mania, signs of over psychosis, hallucinating, floridly psychotic, actively

3

engaging in injurious behavior, lack of basic self-hygiene, and vegetative symptoms) to determine when a juvenile merits psychiatric evaluation for possible hospitalization or short term emergency treatment.  Suicidal ideation and intent are not part of the Sheriff's Office's narrow criteria.  But one of the most commonly hospitalized groups are those who are acutely suicidal.  In my opinion, any juvenile who is suicidal should be evaluated by a psychiatrist or psychologist for possible hospitalization, medication, and treatment.

11.     It remains my opinion that the Sheriff's Office's system of inadequate care where youth are placed in isolation causing trauma and suicidal ideation, then placed in another form of isolation completely devoid of meaningful treatment, puts youth at a much higher risk of morbidity and mortality.

12.     I find it disturbing that the Sheriff's Office and its jail staff continue to minimize the suicidal ideation and intent of juveniles in isolation.  The Sheriff's Office and its staff have generalized that juveniles have malingered suicidal ideation and intent.  These generalizations show a lack of understanding of adolescent psychology, growth, and development.  It remains my opinion, based on my interviews of several juveniles and my review of behavioral health records, that juveniles who later recant their suicidal ideation could have been driven by a desire to get out of the horrendous conditions in the behavioral health unit, or by embarrassment and pride.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: January 30, 2017
       Syracuse, New York

*Louis J. Kraus, MD*
Louis J. Kraus, MD
Chief, Child and Adolescent Psychiatry
Rush University Medical Center

5