UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
V.W., a minor, by and through his parent   :
and natural guardian DERECK WILLIAMS,   :
et al., on behalf of themselves and all others   :
similarly situated,   :
                Plaintiffs,   :
         v.   :      16-CV-1150 (DNH) (DEP)
EUGENE CONWAY, Onondaga County Sheriff,   :
in his official capacity, et al.   :
  :
  :
          Defendants.   :
-------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, AND APPROVAL AND DISTRIBUTION OF THE NOTICE OF SETTLEMENT**

Philip Desgranges
Mariana Kovel
Aadhithi Padmanabhan
Kevin Jason*
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004

Joshua T. Cotter
Susan M. Young
Samuel C. Young
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202

Aimee Krause Stewart
SANFORD HEISLER SHARP, LLP
1666 Connecticut Avenue NW, Suite 300
Washington, D.C. 20009

Dated: June 26, 2017           Counsel for Plaintiffs
      New York, N.Y.         *Not yet admitted in N.D.N.Y.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

    I.   Factual and Procedural Background .................................................................... 1

        A.  Litigation History ................................................................................ 1

        B.  Settlement Negotiations .................................................................. 3

    II.  Overview of Settlement Terms ........................................................................ 3

        A.  Summary of Class-Wide Relief .................................................... 3

    III. Class Action Settlement Procedure and Proposed Schedule ............................... 7

ARGUMENT .............................................................................................................................. 8

    I.   The Proposed Class-Action Settlement Should Be Preliminarily Approved
        Under Rule 23(e) ............................................................................................. 8

        A.  The Proposed Settlement Is Substantively Fair ..................................... 8

        B.  The Settlement Is Procedurally Fair .................................................. 11

    II.  The Form of Notice to Class Members Should Be Approved ........................... 12

CONCLUSION ......................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)........................................................8

*Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, 11-CV-1510
    (MAD)(ATB), 2014 WL 4352060 (N.D.N.Y. Aug. 20, 2014)....................................9, 10

*In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007)....................................7

*In re Medical X-ray Film Antitrust Litig.*, 1997 WL 33320580
    (E.D.N.Y. Dec. 26, 1997) ........................................................................8

*In re Traffic Exec. Ass'n,* 627 F.2d 631 (2d Cir. 1980) ........................................................8

*Johnson v. Wave Comm GR LLC*, No. 10-CV-346 (DNH)(ATB),
    2014 WL 12596537 (N.D.N.Y. July 29, 2014) ........................................................7

*Malchman v. Davis*, 706 F.2d 426 (2d Cir. 1983) ........................................................11

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)........................................8, 12

*Peoples v. Annucci*, 180 F. Supp. 3d 294 (S.D.N.Y. 2016)........................................9, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................8, 11

**STATUTES AND REGULATIONS**

Fed. R. Civ. P. 23 ........................................................................8

Prison Litig. Reform Act, 18 U.S.C. § 3626(a)(1)(A) ........................................................7

**MISCELLANEOUS**

Jesse McKinley, *'Raise the Age' Now Law in New York,*
    *Is Still a Subject of Debate*, N.Y. Times, (Apr. 10, 2017),
    https://www.nytimes.com/2017/04/10/nyregion/raise-the-age-new-york.html..................7

## INTRODUCTION

This class-action litigation challenges the solitary confinement of juveniles at the Onondaga County Justice Center and seeks to enjoin current practices related to the disciplinary and educational system there.  This Court certified a plaintiff class and granted a preliminary injunction on February 22, 2017.  The parties entered into an interim settlement agreement in April 2017, and after additional discovery and negotiations, have reached a final settlement agreement that will result in significant systemic relief for the class.  Under the proposed settlement agreement, the Onondaga County Sheriff's Office will only confine juveniles to their cells to resolve an imminent threat to the safety and security of the facility, and only in those cases where less restrictive measures cannot address the situation.  Such confinement shall be for the minimum time necessary to resolve the threat.  In addition, the Sheriff's Office and the Syracuse City School District will take actions to ensure that eligible juvenile receive the educational instruction and related procedural protections they are entitled to under law.  The proposed settlement agreement would resolve all class claims for injunctive relief.

The parties jointly move this Court to (1) preliminarily approve the class-action settlement and (2) approve the Notice of Proposed Class-Action Settlement and Fairness Hearing, permit the parties to distribute the Notice, and set a date for a fairness hearing on final settlement approval.  Plaintiffs submit this memorandum in support of that motion.

### I.   Factual and Procedural Background

#### A.  Litigation History

On September 21, 2016, plaintiffs commenced this class-action litigation on behalf of themselves and others similarly situated, alleging that, by locking 16- and 17-year olds ("juveniles") in closed cells for disciplinary purposes, defendants Eugene Conway, Esteban

Gonzalez, and Kevin Brisson (collectively, "Sheriff's Office") violated the Eighth and Fourteenth Amendments. The complaint also alleged that, by denying juveniles educational instruction without procedural protections and by denying them special education and related services, defendants violated their rights under the Fourteenth Amendment and the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs sought declaratory and injunctive relief.

In September 2016, Plaintiffs moved for certification of (a) a class of all 16- and 17-year-olds who are now or will be incarcerated at the Justice Center, and (b) a subclass of all 16- and 17-year-olds with disabilities, as defined by the IDEA, who are now or will be incarcerated at the Justice Center, and who are in need of special education and related services. In November 2016, the Syracuse City School District ("School District") moved for summary judgment against plaintiffs' education claims. In December 2016, following a period of expedited discovery, plaintiffs moved for preliminary injunction to end the solitary confinement of juveniles and to ensure that juveniles received the educational services to which they are entitled.

On February 22, 2017, the Court certified the class and subclass in this action, appointed class counsel, denied the School District's motion for summary judgment, and granted plaintiffs' motion for a preliminary injunction. *See* Memorandum-Decision and Order, ECF No. 68 ("Preliminary Injunction Order"). In particular, the Court ordered that the Sheriff's Office was "immediately enjoined and restrained . . . from imposing 23-hour disciplinary isolation on juveniles at the Justice Center." *Id.* at 50. Further, the Court ordered defendants to "immediately afford all eligible juveniles the educational instruction to which they are entitled," "immediately afford all juveniles with qualifying disabilities under the IDEA with the special education services and other procedural protections to which they are entitled," and held that "[d]iscipline imposed on juveniles by the Onondaga County defendants must include meaningful social

interaction with others, including other juveniles, and no discipline may be imposed that directly harms a juvenile's psychological condition." *Id.* at 50-51.  Following the Court's decision, the parties engaged in negotiations and later presented the Court with a Stipulation and Order for an Interim Settlement, which the Court endorsed on April 10, 2017.  *See* ECF No. 78.

### B.  Settlement Negotiations

Over the last three months, the parties have engaged in extensive settlement negotiations, informed by document and data productions, expert tours of the Justice Center, expert recommendations, and confidential interviews with class representatives and class members. The parties have now agreed to a final settlement, attached as Exhibit 1 to the Notice of Joint Motion.

## II.    Overview of Settlement Terms

### A. Summary of Class-Wide Relief

Under the proposed settlement the defendants will take actions that include the following:

1. Restrict the use of disciplinary confinement to situations where a juvenile poses an imminent threat to the safety and security of the facility and where less restrictive measures will not adequately address the threat. *See* Settlement Agreement, attached to Notice of Joint Motion as Ex. 1, ¶ 2.

2. Restrict the use of disciplinary confinement to the minimum period of time necessary to resolve an imminent threat to the safety and security of the facility. *See id.*

3. Prohibit the placement of juveniles in segregated housing units.  *See id.* ¶ 1.

4. Prohibit the use of disciplinary confinement for juveniles who refuse to attend educational instruction.  *See id.* ¶ 3.

5. Implement regular reviews of every juvenile's disciplinary confinement and release the juvenile from confinement once the reviewer determines that the imminent threat is resolved.  *See id.* ¶¶ 5, 7-8.

6. Provide prompt notice to mental health staff whenever a juvenile is placed in disciplinary confinement so that mental health staff may employ mediation or crisis intervention techniques to resolve the imminent threat, provided that mental health staff are available to do so and deem such techniques to be appropriate. *See id.* ¶ 6.

7. Provide an assessment by a licensed mental health professional of every juvenile in disciplinary confinement beyond one staff shift to determine (a) whether the juvenile poses an imminent threat because of a mental health concern or (b) whether the juvenile is experiencing serious harm as a result of cell confinement.  If either is the case, follow the recommendations of the licensed mental health professional.  *See id.* ¶ 9.

8. Provide any juvenile in disciplinary confinement at least two hours of recreation per day, one shower per day, legal and non-legal visits, the education and special education and related services to which they are entitled under the law, and access to any other services to which they are entitled under the law.  *See id.* ¶ 10.

9. Allow juveniles in disciplinary confinement to speak with other juveniles and to eat their meals outside their cells with other juveniles, provided that neither action jeopardizes the safety and security of the facility.  *See id.* ¶¶ 11-12.

10. Provide psychosocial group counseling or psychiatric assessment and treatment as found necessary by licensed mental health professionals or as requested by juveniles. *See id.* ¶ 20.

11. Make good-faith efforts to expand programming available to juveniles and ensure that juveniles are aware of and have access to all programming available to them. *See id.* ¶ 18.

12. Implement a comprehensive behavior-management system that, among other things, will include (a) an incentive program for juveniles with a reward system to encourage positive behavior, (b) a list of prohibited behaviors and their consequences, (c) a least-restrictive sanctions system where sanctions are proportional to the alleged offense, (d) a treatment program, and (e) a description of the full range of programming offered at the Justice Center. *See id.* ¶ 13.

13. Develop and implement individual behavior management plans for each juvenile that will identify the special needs of the juvenile and any accommodations required for the juvenile's medical, mental health, or educational needs. *See id.* ¶ 17.

14. Maintain a multi-disciplinary team of security staff, medical and mental health staff, and educational staff to serve as the Youth Coalition Team that will supervise, educate, care for, and work with juveniles at the Justice Center. *See id.* ¶ 15.

15. Train the Youth Coalition Team members and Justice Center staff who interact with juveniles on the behavior management system and on techniques and best practices in supervising juveniles in an instructional context. *See id.* ¶ 19.

5

16. Provide sufficient classroom space and security staff to escort juveniles to classroom space and supervise juveniles during instruction.  *See id.* ¶ 21.

17. Offer all eligible juveniles three hours of instruction per school day, including during the summer session.  *See id.* ¶ 22.

18. Advise juveniles of the availability of high school credit-bearing instruction and programs from the School District at the Justice Center.  *See id.* ¶ 27.

19. Provide juveniles classified as having a disability with the special education and related services set forth in the juvenile's most recent Individualized Education Plan.  *See id.* ¶ 23.

20. Arrange for the annual review or reevaluation of juveniles who were classified as having a disability and are due for a review or reevaluation.  *See id.* ¶ 25.

21. Maintain procedures for the referral and identification of juveniles suspected of having a disability.  *See id.* ¶ 24.

22. When any juvenile classified as having a disability is removed from instruction for ten or more school days either at the request of the School District or because of the juvenile's behavior during instruction, conduct a review to determine whether the behavior resulting in removal was a manifestation of the juvenile's disability.  *See id.* ¶ 28.

The proposed settlement agreement will also allow class counsel to obtain documents from defendants, conduct tours of the Justice Center with experts, and communicate with representatives of both defendants so class counsel can monitor defendants' compliance with the settlement.  *See id.* ¶¶ 29-34.  The parties have also agreed to conduct good-faith negotiations with each other over reasonable attorneys' fees and costs.  *See id.* ¶ 48.  The settlement term is

anticipated to last over two years until October 1, 2019, on the understanding that juveniles will be removed from the Justice Center by then.[1]  *See id.* ¶ 41.

This proposed settlement agreement reflects the complexity of designing a system that restricts the use of disciplinary confinement at the Justice Center and affords all eligible juveniles the educational instruction and procedural protections they are entitled to under law, while ensuring everyone's safety.  The parties agree and jointly ask the Court to find that the proposed settlement satisfies 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act.  *See id.* ¶ 35.

## III.   <u>Class Action Settlement Procedure and Proposed Schedule</u>

Courts have established a two-step process for settlement approval in class actions in order to safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests.  First, a court will preliminarily approve of the proposed settlement.  Following dissemination of the notice of settlement to affected class members, the court holds a fairness hearing at which class members may be heard regarding the settlement, and at which arguments concerning the fairness, adequacy, and reasonableness of the settlement may be presented.  Fed. R. Civ. P. 23(e); *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see, e.g., Johnson v. Wave Comm GR LLC*, No. 10-CV-346 (DNH)(ATB), 2014 WL 12596537, at *1 (N.D.N.Y. July 29, 2014) (preliminarily approving the proposed settlement, approving the proposed notice to the class and ordering its dissemination, and setting a fairness hearing).  The parties request that the Court address both steps at this time.

---

[1] In April 2017, legislation passed to raise the age of criminal responsibility requiring that 16-year-olds be transferred out of county jails by October 1, 2018 and 17-year-olds by October 1, 2019. Jesse McKinley, *'Raise the Age' Now Law in New York, Is Still a Subject of Debate*, N.Y. Times, (Apr. 10, 2017), https://www.nytimes.com/2017/04/10/nyregion/raise-the-age-new-york.html.

<u>**ARGUMENT**</u>

The parties jointly move the Court to (1) grant preliminary approval of the class-action settlement, pending a fairness hearing and (2) approve the proposed Notice to the class and subclass, and permit the parties to distribute the Notice.

**I.   <u>The Proposed Class-Action Settlement Should Be Preliminarily Approved Under Rule 23(e)</u>**

Under Rule 23(e), "[a] court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion.  A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citations and internal quotation marks omitted); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009) (applying the standard articulated in *Wal-Mart* to a Rule 23(b)(2) class action settlement).  To grant preliminary approval, this Court need only find that there is "'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). "[P]reliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlement." *In re Medical X-ray Film Antitrust Litig.*, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997).  The plaintiffs respectfully submit that the proposed settlement agreement satisfies the standard for preliminary approval because it is both substantively fair and the product of arms-length negotiations.

**A.  The Proposed Settlement Is Substantively Fair**

The Second Circuit has identified nine factors to consider in assessing the fairness of a proposed settlement. *Wal-Mart Stores*, 396 F.3d at 117 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).  As this Rule 23(b)(2) class settlement does not seek damages

for the class, only five of the nine factors are relevant here: 1) the complexity, expense and likely duration of the litigation, (2) the stage of the proceedings and the amount of discovery completed, (3) the risks of establishing liability, (4) the risks of maintaining the class action through the trial, and (5) the reaction of the class to the settlement.  *See id.*; *see also Peoples v. Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016) (recognizing that the remaining factors do not apply "as they address monetary damages").   Each of the first four factors supports preliminary approval of the settlement, and the fifth factor will be evaluated during the fairness hearing.

1.     <u>Complexity, expense and likely duration of the litigation</u>. This case involves complex, fact-intensive constitutional and statutory claims.  Had this case continued to litigation, plaintiffs anticipate that defendants would have offered a vigorous defense.  The parties would expend a considerable amount of time and resources on discovery, motion practice, and interlocutory appeals.  A trial would be lengthy, complex, and require substantial attorney and expert resources.  The proposed settlement ensures timely class relief without the expense and duration of complex civil-rights litigation.

2.     <u>Stage of the proceedings and the amount of discovery completed</u>. When assessing the amount of discovery completed, "[t]he proper question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, 11-CV-1510 (MAD)(ATB), 2014 WL 4352060, at *5 (N.D.N.Y. Aug. 20, 2014) (internal citation and quotation marks omitted).   Plaintiffs' counsel obtained substantial discovery to assess the merits of the case before negotiating this final settlement.  *See* Declaration of Joshua Cotter in Support of Joint Motion for Preliminary Approval of Class-Action Settlement, dated June 26, 2017 ("Cotter Decl."), ¶¶ 7, 12.  Before initiating this case,

plaintiffs' counsel conducted numerous interviews of juveniles housed at the Justice Center, *see id.* ¶ 3, and obtained information from the Sheriff's Office through a Freedom of Information Law ("FOIL") request regarding the solitary confinement of juveniles and the educational services at the Justice Center.  Cotter Decl., Ex. A.

After filing suit, plaintiffs obtained the following expedited discovery in support of their preliminary injunction motion: (a) documents and data regarding the use of solitary confinement for juveniles; (b) documents regarding the provision of educational services to juveniles; (c) tours of the Justice Center by plaintiffs' psychiatrist expert and two corrections experts, which included interviews of juveniles and staff; and (d) photographs of all areas in which juveniles are housed at the Justice Center.  Cotter Decl., Exs. B-C.  Through FOIL requests and expedited discovery, plaintiffs accumulated such a substantial amount of information that this Court remarked that plaintiffs "have submitted a mountain of evidence" in support of their preliminary injunction motion.  Preliminary Injunction Order at 5.  In addition, under the interim settlement agreement, plaintiffs' counsel have received and continue to receive discovery reflecting the changing confinement and education practices at the Justice Center.  *See* Cotter Decl. ¶ 12.  As a result, plaintiffs had the benefit of substantial discovery before negotiating the proposed settlement agreement.

3.    <u>Risks of establishing liability</u>.  Establishing liability, especially in complex class action lawsuits, bears considerable risks.  *See Hanifin,* 2014 WL 4352060, at *6. While the plaintiffs are confident they would have prevailed were this case not being settled, the proposed settlement balances the tangible and immediate benefits for the class with the risks of no relief following a protracted litigation.  Moreover, in cases challenging the conditions within a correctional facility, "[a] settlement is vastly superior to a litigated outcome" because litigation is

"a non-consensual process not likely to result in an improved attitude or atmosphere within the [facility]." *Peoples*, 180 F. Supp. 3d at 308.

    4. <u>Risk of maintaining a class through trial</u>.  Although this risk is mitigated to a large extent by the fact that the Court has already certified the class for trial, "decertification is always possible as a case progresses and additional facts are developed." *Wal-Mart Stores*, 396 F.3d at 119 n.24.  This proposed settlement eliminates that risk.

  **B.  The Settlement is Procedurally Fair**

    A settlement is entitled to a presumption of fairness, adequacy and reasonableness if the settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (citations and internal quotation marks omitted); *see also Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983) (noting that, in determining fairness, adequacy, and reasonableness, the negotiation process should be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves).  The negotiations in this case readily meet this standard.  Plaintiffs' counsel have decades of litigation experience, and counsel for defendants are similarly well experienced.  *See* Cotter Decl. ¶¶ 16, 20; *see also* Declaration of Christopher T. Dunn in Support of Motion for Class Certification, ECF No. 5-5, Ex. 14.  As discussed above, the negotiations were informed by substantial discovery. The parties exchanged several draft settlements and counsel zealously represented their clients' interests during negotiations.  *See* Cotter Decl. ¶ 13.  The proposed settlement is the product of these fully-informed negotiations and reflects compromises by all parties.

**II.**    **The Form of Notice to Class Members Should Be Approved**

Notice of the proposed settlement "must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *McReynolds*, 588 F.3d at 804-05 (citation and internal quotation marks omitted). The proposed notice, attached as Exhibit D to the Cotter Declaration, will be posted in English and Spanish in a manner that will reach all class members housed at the Justice Center.  The notice will apprise the class of the key settlement terms, the manner that class members can review the entire proposed settlement, the date and location of the fairness hearing, and instruct class members on how they can be heard on the proposed settlement by writing to the Court.

## CONCLUSION

The parties jointly request the Court grant a Preliminary Approval Order including the following relief:

1. Grant preliminary approval of the proposed settlement;

2. Approve the form of the class notice, and direct the Onondaga County Sheriff's Office to provide notice to all class members housed in the Justice Center within 10 days of entry of the Preliminary Approval Order, by posting copies of the Notice in English and Spanish in prominent and visible locations accessible to all juvenile inmates on a daily basis, ensuring that the Notice remains posted during the entire comment period, and delivering a copy of the Notice to every juvenile housed in the Justice Center during the notice period;

3. Provide class members with forty-five days after Notice is posted and served to comment on the proposed settlement as specified in the Notice; and

4. Set a date for a fairness hearing for final approval of the settlement.

Dated: June 26, 2016
      New York, New York

                                              Respectfully submitted,

Philip Desgranges
Mariana Kovel
Aadhithi Padmanabhan
Kevin Jason*
Christopher Dunn
NEW YORK CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300

Joshua T. Cotter
Susan M. Young
Samuel C. Young
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202
Tel: (315) 703-6500

Aimee Krause Stewart
SANFORD HEISLER SHARP, LLP
1666 Connecticut Avenue NW, Suite 300
Washington, D.C. 20009
Of Counsel

*Attorneys for Plaintiffs*

  *Not yet admitted to N.D.N.Y.

13