UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

V.W., a minor, by and through his parent   :
and natural guardian DERECK WILLIAMS,   :
et al., on behalf of themselves and all others   :
similarly situated,   :
                Plaintiffs,   :         16-CV-1150 (DNH) (DEP)
  :
  :
          v.   :
  :
EUGENE CONWAY, Onondaga County Sheriff,   :
in his official capacity, et al.   :
  :
  :
           Defendants.   :

---------------------------------------------------------------x

## STIPULATION AND ORDER FOR A FINAL SETTLEMENT AGREEMENT

**WHEREAS**, Plaintiffs filed a class action Complaint alleging that, by locking juveniles in closed cells for disciplinary purposes, the Sheriff's Office violated Plaintiffs' Eighth and Fourteenth Amendment rights and that, by denying juveniles educational instruction without procedural protections and special education and related services, Defendants violated Plaintiffs' rights under the Fourteenth Amendment and the Individuals with Disabilities Education Act;

**WHEREAS**, the Court certified a class and a subclass in this Action on February 15, 2017;

**WHEREAS**, the Court issued a preliminary injunction in this Action on February 22, 2017;

**WHEREAS**, since the initiation of this Action, the Defendants have provided Plaintiffs with extensive data and documents concerning the disciplinary and education policies and practices for juveniles at the Onondaga County Justice Center;

**WHEREAS,** the Parties entered into a Stipulation and Order for an interim settlement agreement that was approved by the Court on April 10, 2017;

**WHEREAS,** the Parties have engaged in extensive settlement negotiations and have voluntarily agreed to enter into this Settlement Agreement to resolve this Action;

**WHEREAS,** the Parties represent and agree that this Settlement Agreement is fair, reasonable, and adequate to protect the interests of all Parties and the class;

**WHEREAS,** the Parties have negotiated in good faith and have agreed to settle this Action on the terms and conditions set forth herein;

**WHEREAS,** nothing in this Settlement Agreement shall be construed as an admission of law or fact or acknowledgement of liability, wrongdoing, or violation of law by the Defendants regarding any of the allegations contained in the Complaint in this Action, or as an admission or acknowledgement by Defendants concerning whether Plaintiffs are the prevailing party in this action by virtue of this Settlement Agreement; and

**WHEREAS,** the agreement and any Order entered therein shall have no precedential value or effect whatsoever, and shall not be admissible, in any other action or proceeding as evidence or for any other purpose, except in an action or proceeding to enforce this Agreement;

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED AS FOLLOWS:**

2

## DEFINITIONS

As used in this Agreement:

**Action** means *V.W., et. al. v. Conway, et. al.*, Case No. 16-CV-1150 (United States District Court for the Northern District of New York), filed September 21, 2016.

**Plaintiffs or Plaintiffs Class** means the named Plaintiffs and the class and subclass as certified by the Court in this Action.

**Defendants** means Eugene Conway, Esteban Gonzalez, Kevin M. Brisson in their official capacity, and the Syracuse City School District.

**Parties** means the Plaintiffs and Defendants in this Action.

**School District** means the Syracuse City School District.

**Sheriff's Office** means the Onondaga County Sheriff's Office and Sheriff's Office personnel.

**Sheriff's Office Defendants** means Eugene Conway, Esteban Gonzalez, and Kevin M. Brisson in their official capacity.

**Discipline/Disciplinary** means punitive actions taken in response to alleged misbehavior, including, but not limited to, the imposition of lock-in or no contact orders.

**Effective Date** means the date of entry of the order of United States District Court for the Northern District of New York approving this Settlement Agreement.

**Justice Center or Jail** means the Onondaga County Justice Center.

**Juvenile(s)** means any person or persons under eighteen years of age.

**Youth Coalition Team** means the multi-disciplinary team of the Sheriff's Office staff, medical and mental health staff contracted to provide health-related services at the Justice Center, and the Syracuse City School District staff assigned to supervise, educate, care for, or work with juveniles at the Justice Center.

**Settlement Agreement or Agreement** means this Stipulation and Order for a Final Settlement Agreement between the Parties.

**Mental Health professional(s)** means mental health professionals contracted by the Sheriff's Office to provide mental health-related services to inmates in the Justice Center.

3

I.   **BEHAVIOR MANAGEMENT**

      A.   **Restrictions on the Use of Confinement**

1.  The Onondaga County Sheriff's Office shall not place any juvenile in a segregated housing unit, including, but not limited to, cells in 5BSH3.

2.  No juvenile may be locked in a closed cell for disciplinary purposes unless the juvenile poses an imminent threat to the safety and security of the facility and less restrictive measures will not adequately address the threat.  Such confinement shall be for the minimum period of time necessary to resolve the threat.

3.  No juvenile shall be locked in a closed cell pursuant to paragraph I(A)(2) for refusing to attend educational instruction.

4.  As soon as practicable after locking a juvenile in his or her cell pursuant to paragraph I(A)(2), a deputy shall create a written incident report, describing the imminent threat to the safety and security of the facility and any less-restrictive measures that were used before confinement.

5.  To ensure compliance with paragraph I(A)(2), if time and circumstances permit, the deputy on duty shall review the precipitating incident that resulted in the confinement, assess the behavior of the juvenile, and release the juvenile if he or she is no longer an imminent threat to the safety and security of the facility. If the threat has not been resolved, the deputy shall document the reasons why on the inmate monitor report.

6.  The Sheriff's Office shall promptly notify Mental Health whenever a juvenile is confined to their cell pursuant to paragraph I(A)(2) so that mental health staff (those trained in mediation

and crisis intervention) may as soon as practicable employ mediation or crisis intervention techniques to resolve the threat, provided that the mental health staff is available to do so and deem such techniques to be appropriate.  When such techniques are used, they shall be documented.

7.  No juvenile shall be locked in a cell pursuant to paragraph I(A)(2) beyond the 8-hour staff shift during which the juvenile was first placed in such confinement unless the next shift's incoming Watch Commander first interviews the juvenile, conducts a review of all relevant documentation including the incident report, and determines that continued confinement is necessary pursuant to the standard in paragraph I(A)(2).  The Watch Commander shall document his/her conclusions on the  inmate monitor report, including the specific facts upon which the Watch Commander concludes that the juvenile poses an imminent threat to the safety and security of the facility, update the inmate information system, and, if continued confinement is found necessary, notify the Security and Operations Captain.  No juvenile shall be locked in a cell pursuant to paragraph I(A)(2) for subsequent 8-hour staff shifts unless the Watch Commander conducts the review and does the documenting described in this paragraph at the beginning of each subsequent shift.

8.  No juvenile shall be locked in a cell for disciplinary purposes for more than nine (9) consecutive 8-hour staff shifts, unless the Security and Operations Captain first interviews the juvenile, conducts a review of all relevant documentation including the incident report, and determines that continued confinement is necessary pursuant to the standard in paragraph I(A)(2).  The Security and Operations Captain shall document his or her conclusions pursuant to the procedure in paragraph I(A)(7).  If the Security and Operations Captain determines that

the juvenile should remain locked into his or her cell, the Sheriff's Office shall notify Plaintiffs' counsel as soon as practicable. Under these circumstances, the Youth Coalition Team shall meet at the earliest opportunity to discuss and implement a specialized behavior management plan.

9.  Any juvenile locked in a cell pursuant to paragraph I(A)(2) beyond the initial 8-hour staff shift during which the juvenile was first placed in such confinement shall, during the subsequent 8-hour staff shift, be seen by a medical/mental health professional who will assess and document: (a) whether the juvenile poses an imminent threat of bodily harm to self or others because of a mental health concern or (b) whether the juvenile is experiencing serious harm as a result of their cell confinement. If the licensed mental health professional determines either to be the case, the Sheriff's Office shall follow the alternative placement or behavior management recommendations of the licensed mental health professional.

10. Any juvenile locked in a cell pursuant to paragraph I(A)(2) shall be afforded at least two hours of recreation per day, one shower per day, legal and non-legal visits, the education and special education and related services to which they are entitled under the law, and access to any other services to which they are entitled under the law.

11. Any juvenile locked in a cell pursuant to paragraph I(A)(2) shall be permitted to speak with other inmates in their housing unit provided the communication does not jeopardize the safety and security of the facility.

12. Any juvenile locked in a cell pursuant to paragraph I(A)(2) shall be permitted to eat their meals outside their cells during scheduled meal times with others unless jail staff determines that their participation would pose a threat to the safety and security of the facility.

**B.  Implementation of a Comprehensive Behavior Management System**

13. To effectuate section I(A) of this Agreement while maintaining the safety of the Justice Center, the Sheriff's Office shall implement a comprehensive behavior management system that shall include, at a minimum, (a) an incentive program for juveniles with a reward system to encourage positive behavior, including, but not limited to, participation in programming and education services; (b) a list of prohibited behaviors and their consequences (including a list of those behaviors for which a juvenile may be placed in confinement under paragraph I(A)(2)); (c) a least-restrictive sanctions system where sanctions are proportional to the alleged misbehavior; (d) a treatment program that screens juveniles for mental illnesses and offers psychosocial group counseling or psychiatric assessment and treatment as found necessary by licensed mental health professionals or as requested by juveniles; and (e) a description of the full range of programming offered at the Justice Center by the Sheriff's Office and the Syracuse City School District.

14. The Sheriff's Office shall apply a least-restrictive sanctions system including, but not limited to, the following: (i) on the spot correction; (ii) counseling; (iii) removal of points or privileges earned under the incentive system; and (iv) the imposition of a work task for the day.

15. The Sheriff's Office shall maintain a Youth Coalition Team to work with juveniles at the Justice Center.

16. The Sheriff's Office shall provide a Juvenile Inmate Handbook to juveniles upon their entry into the Justice Center that explains the behavior management system.  The Sheriff's Office

7

shall also update its Minor Inmate Behavior Development and Management directive to describe the behavior management system to all staff.

17. The Youth Coalition Team shall develop, and the Sheriff's Office shall implement, individual behavior management plans for each juvenile following the juvenile's reception period at the Justice Center that will identify the special needs of the juvenile and any accommodations required for the juvenile's medical, mental health, or educational needs. If a licensed mental health professional has identified a juvenile as having a chronic or serious mental illness, the behavior management plans shall accommodate these juveniles by requiring that alternatives to disciplinary confinement be used except when the juvenile poses a serious and imminent threat to the safety and security of the facility.

18. The Sheriff's Office and the School District shall make good-faith efforts to expand programming available to juveniles. The Youth Coalition Team shall ensure that juveniles are informed of, and have access to, the programming available to them.

19. The Sheriff's Office shall train the Youth Coalition Team members and Justice Center staff who interact with juveniles (including all Watch Commanders) on the behavior management system and on techniques and best practices in supervising juveniles in an institutional context.

20. Licensed mental health professionals from the Youth Coalition Team shall provide any juvenile with psychosocial group counseling or psychiatric assessment and treatment as found necessary by the professionals or as requested by juveniles.

8

## II.   EDUCATION

21. The Sheriff's Office will provide sufficient classroom space in the Justice Center, and security staff to escort juveniles to that classroom space and supervise juveniles during instruction, as the School District determines is necessary to meet the educational obligations of this Agreement. If a juvenile refuses to attend educational instruction, the Sheriff's Office shall provide written notification of that refusal to the School District.

22. The School District will offer, and maintain sufficient staff to offer, all eligible juveniles with three hours of instruction per school day, beginning no later than ten (10) calendar days after the juveniles has been incarcerated, including during its summer session.

23. In the case of a juvenile who was classified as a Student with a Disability prior to incarceration, the instruction offered to the juvenile will be provided by a Certified Special Education Teacher, and the School District will offer to the juvenile the related services set forth on the juvenile's most recent Individualized Education Plan.

24. In the case of a juvenile who is not classified as a Student with a Disability prior to incarceration, the School District will maintain procedures for the referral and identification of juveniles suspected of having a disability for an evaluation and determination of eligibility for special education in accordance with the requirements of 8 NYCRR § 200.4, including the timelines set forth therein.  The instructional staff of the School District at the Justice Center, the juvenile's parent, or any other person allowed to make referrals under 8 NYCRR § 200.4  may refer a juvenile for evaluation. The referrals will be directed to the Principal overseeing the Justice Center instructional program, who is currently the Principal of the

9

Johnson Vocational Center (the "Principal") and will be considered the building administrator within the meaning of 8 NYCRR § 200.4. The Principal and the School District's Director of Special Education will be responsible for obtaining consent to evaluate from the juvenile's parent, and for proceeding with the necessary evaluations upon obtaining such consent in accordance with the requirements in 8 NYCRR § 200.4.

25. In the case of a juvenile who was classified as a Student with a Disability prior to incarceration, and who is due for an annual review, or a reevaluation, the School District will arrange such annual review or reevaluation in accordance with the requirements of 8 NYCRR § 200.4, including the timelines set forth therein.

26. The School District will take attendance of the juvenile in the educational programs, programing offered by the School District, and special education related services at the Justice Center, and provide such records to counsel for the plaintiffs on a regular basis. In the event that the Sheriff's Office "locks down" the Justice Center, or otherwise fails to make juveniles available for instruction or programming, such events will be noted on the attendance records.

27. In the case of juveniles who are expected to be incarcerated for more than ten (10) calendar days, instructional staff will meet with the juvenile at the time instruction is offered to advise them of the high school credit-bearing instruction and programs available from the School District for juveniles at the Justice Center. The School District will create a written program participation form, explaining the programs and their availability (including days and times), and permitting juveniles to select in writing the programs in which they would like to participate. Such program participation forms will be provided to juveniles as soon as

10

practicable after their initial reception period. The School District will create a written form, explaining the benefits and availability of high school credit-bearing instruction, to be acknowledged and signed by the juvenile at the commencement of instruction. In the case of juveniles who are residents of the School District, during this initial meeting the School District will complete any necessary documentation to allow the juvenile, upon discharge, to resume attending the juvenile's assigned high school without the necessity of re-enrolling as a student of the School District. The School District will create a form, to be placed in a juvenile's property, informing the juvenile of the school they will be enrolled in following their discharge.

28. In the case of a juvenile who has been classified as a Student with a Disability and who has been removed from instruction at the Justice Center for ten (10) or more school days during a school year for conduct taking place during instruction, or where the removal from instruction has been made by the Sheriff's Office at the request of the School District, the School District and the Sheriff's Office will hold a meeting, with the juvenile's parent to be invited, to determine whether the conduct resulting in the removal from instruction was a manifestation of the juvenile's disability as set forth in 8 NYCRR § 201.4(d). The School District representatives at the meeting will include a school psychologist, a special education teacher and an administrator.

## III.   REPORTING AND MONITORING

29. The Sheriff's Office shall allow Plaintiffs' counsel and their experts to conduct tours of the Justice Center, conduct confidential interviews with any juvenile, and observe any provision

11

of services when requested subject to reasonable restrictions due to facility lockdowns or similar security concerns.

30. Within ten (10) days of the Effective Date, the Sheriff's office shall provide Plaintiffs' counsel with:

>    a. the Juvenile Inmate Handbook, Minor Inmate Behavior Development and Management directive.
>
>    b. the training materials used to train the Youth Coalition Team members and Justice Center staff who interact with juveniles pursuant to paragraph I(B)(19).

31. Each month, the Sheriff's Office shall allow Plaintiffs' counsel to enter the Justice Center (Administration) and review, scan, or copy (with scanning and copying costs to be borne by Plaintiffs' counsel) the documents listed in a-c of this paragraph, subject to receiving 24 hours' notice of Plaintiffs' counsel's visit to the Justice Center and subject to reasonable restrictions if the review, scanning, or copying is unduly disruptive to the good running order of the facility: :

>    a. copies of all incident reports, inmate monitor reports, and forms that document the charges and the time in and time out of confinement for juveniles locked in a cell pursuant to paragraph I(A)(2) during the previous month;
>
>    b. copies of any behavior management plans for the previous month pursuant to paragraph I(A)(8);

12

      c.   any document that records the following information for the previous month: (i) all incidents during which a juvenile was locked in their cell pursuant to paragraph I(A)(2) for that month, including their name, ICN, race, sex, and date of birth (month/year); (ii) the behavior that resulted in confinement; (iii) confinement begin date and time; (iv) confinement end date and time; and (v) any remarks relating to the confinement;

32. By no later than the seventh day of each month, the School District shall provide Plaintiffs' counsel with:

      a.  the attendance forms, required by paragraph II(26), that were filled out for juveniles for the previous month;

      b.  all written forms on which juveniles acknowledge the availability of high school credit-bearing instruction for the previous month;

      c.  all program participation forms filled out by juveniles for the previous month.

33. Counsel for the plaintiffs may email Lieutenant Leland Guillaume with any questions regarding compliance with this Agreement, with a copy of the email to the counsel for the Sheriff's Office. If Lieutenant Leland Guillaume is no longer available to answer questions, the Sheriff's Office shall identify a new individual who is available.

34. The Principal will be the School District's compliance coordinator for the purposes of this Agreement, and counsel for the plaintiffs may email the Principal with any questions regarding compliance with this Agreement, with a copy of the email to counsel for the School District. If the School District changes its compliance coordinator, the School

13

District shall promptly notify Plaintiffs' counsel of the identity of the new compliance coordinator.

## IV.   ENFORCEMENT

35. The Parties agree and jointly request that the Court find that this Agreement satisfies the requirements of 18 U.S.C. § 3626(a).

36. The Parties commit to work in good faith to avoid enforcement actions. If Plaintiffs believe that Defendants are not in compliance with a provision of this Settlement Agreement, Plaintiffs shall give notice to all parties in writing and shall state with specificity the alleged non-compliance.  Upon receipt of such notice by Defendants, the Parties will promptly engage in good-faith negotiations concerning the alleged non-compliance and appropriate measures to cure any non-compliance. If Plaintiffs and the Defendants have not reached an agreement on the existence of the alleged non-compliance and curative measures within twenty-one (21) days after receipt of such notice of alleged non-compliance, Plaintiffs may seek all appropriate judicial relief with respect to such alleged non-compliance, upon two (2) business days' prior notice ("Escalation Notice") to counsel for the Defendants, which notice shall inform such counsel that Plaintiffs intend to seek judicial relief. The Parties may extend these time periods by written agreement. Nothing said by any party or counsel for any party during the good-faith negotiations referenced in this paragraph may be used by the other party or parties in any subsequent litigation, including, without limitation, litigation in connection with this Agreement, for any purpose whatsoever.

37. Notwithstanding the dispute resolution procedures set forth above, if exigent circumstances arise, Plaintiffs may seek expedited judicial relief against the Defendants based upon an

14

alleged breach of this Agreement, upon three (3) business days' prior notice to counsel for the Defendants.

38. The failure by any party to enforce any provision of this Agreement with respect to any deadline or other provision herein shall not be construed as a waiver of their right to enforce deadlines or provisions of this Agreement.

## V. **MODIFICATION**

39. This Agreement may not be modified without the written consent of the Parties and the approval of the Court.

## VI.   **SETTLEMENT TERM**

40. This Agreement is effective immediately upon the final approval of the Court.

41. This Agreement shall expire on October 1, 2019, unless juveniles continue to be housed at the Justice Center, in which case this Agreement shall expire after the Sheriff's Office notifies the Court and Plaintiffs confirm that all juveniles have been permanently removed from the Justice Center and will no longer be housed there.

## VII.   **EXECUTION AND BINDING EFFECT**

42. This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the full efficacy of a signed original.  Photocopies and PDFs of such signed counterparts may be used in lieu of the originals for any purpose.

43. The undersigned representative of each party to this Agreement certifies that each is authorized to enter into the terms and conditions of this Agreement and to execute and bind legally such party to this document.

44. The terms and conditions of this Agreement, and the commitments and obligations of the Parties, shall inure to the benefit of, and be binding upon, the successors and assigns of each party.

## VIII.  ENTIRE AGREEMENT

45. This Agreement contains all the terms and conditions agreed upon by the Parties with regard to the final settlement contemplated herein, and, following the Court's final approval, supersedes all prior agreements, representations, statements, negotiations, and undertakings (whether oral or written) with regard to the settlement of this Action.

## IX.  NOTIFICATIONS TO COUNSEL

46. Notices and other written communications pursuant to this Agreement shall be in writing. Notices shall be addressed to the attorneys of the respective parties specified in the signature pages of this Agreement.

47. In the event that any substitution is to be made in counsel to receive communications under this Agreement, all counsel shall be informed, and the name and contact information for substitute counsel shall be provided.

## V.  ATTORNEYS' FEES AND COSTS

48.    Following the Court's approval of this Agreement, the Parties shall engage in good-faith negotiations over reasonable attorneys' fees and costs for Plaintiffs' counsel.

Philip Desgranges, Esq.
Mariana Kovel, Esq.
Aadhithi Padmanabhan, Esq.
Christopher Dunn, Esq.
NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
Tel: (212) 607-3300
pdesgranges@nyclu.org
mkovel@nyclu.org
apadmanabhan@nyclu.org
cdunn@nyclu.org

Joshua T. Cotter, Esq.
Susan M. Young, Esq.
Samuel C. Young, Esq.
LEGAL SERVICES OF CENTRAL NEW YORK
221 S. Warren Street
Syracuse, New York 13202
Tel: (315) 703-6500
jcotter@lscny.org
syoung@lscny.org
samyoung@lscny.org

Aimee Krause Stewart
SANFORD HEISLER SHARP, LLP
1666 Connecticut Avenue NW, Suite 300
Washington, D.C. 20009
Of Counsel

*Attorneys for Plaintiffs*

Dated: June ___, 2017

Carol L. Rhinehart, Esq.
Onondaga County, Department of Law
John H. Mulroy Civil Center, 10th Floor
421 Montgomery Street
Syracuse, New York 13202
Tel. (315)-435-2170
CarolRhinehart@ongov.net

*Attorney for the Sheriff's Office Defendants*

Jonathan B. Fellows, Esq.
Bond Schoeneck & King LLC
One Lincoln Center
Syracuse, New York 13202
Tel: (315)-218-8625
jfellows@bsk.com

*Attorney for Defendant Syracuse City
School District*

SO ORDERED this 28th day of August
2017

UNITED STATES DISTRICT JUDGE

17

Utica, N.Y.